GRAEFF (RIGGS v.). See Case No. 11,826.

GRAFF (KEIME v.). See Case No. 7,650.

GRAFF (UNITED STATES v.). See Case No. 15,244.

## Case No. 5,655.

### The GRAFTON.

### [1 Blatchf. 173.] 1

Circuit Court, S. D. New York. Oct. Term, 1846.2

APPEAL — PREPONDERANCE OF EVIDENCE—DELIVERY OF CARGO.

1. In order to warrant a reversal by this court upon a mere question of fact, on an appeal from the decree of a district court, in admiralty, the preponderance of the evidence should be of a somewhat decided character; such as would justify the granting of a new trial in a court of common law, on the ground that the verdict was against the weight of evidence.

[Cited in Egbert v. Baltimore & O. R. Co., Case No. 4,305; The Juniata, 93 U. S. 339; The Maggie P., 25 Fed. 206; The Parthian, 48 Fed. 564; The Albany, Id. 565; Re Hawkins, 147 U. S. 486, 13 Sup. Ct. 527.]

2. The consignee of a vessel has authority to arrange with the owner or consignee of her cargo in respect to the time and manner of its delivery, and an agreement for that object is not an independent agreement or a mere personal matter between the parties.

[Cited in Sprague v. West, Case No. 13,255; Salmon Falls Manuf'g Co. v. The Tangier, Id. 12,266; Irzo v. Perkins, 10 Fed. 780; Devato v. Eight Hundred and Twenty-Three Barrels of Plumbago, 20 Fed. 516.]

3. Where B., the consignee of a vessel, not owning any part of her, commenced discharging a quantity of hemp consigned to H., and, before its discharge was completed, agreed with H. to stop discharging, because the weather was bad, but violated his agreement and discharged all the hemp upon the wharf, where so much of it as had not been removed by H. was damaged by rain: Held, on a libel in rem against the vessel, filed by H., that he was entitled to recover the loss occasioned by such damage.

[Cited in The Surrey, 26 Fed. 794.]

[Distinguished in Crawford v. Clark, 15 Ill. 565; McAndrew v. Whitlock, 52 N. Y. 51.]

[Appeal from the district court of the United States for the Southern district of New York.]

Heran, Lees & Co., of New-York, filed a

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
2 [Affirming Case No. 5,656.]

libel in rem, in the district court, against the ship Grafton, to recover the loss on one hundred and sixty-two bales of hemp, alleged to have been damaged by rain while being discharged from the vessel and through the fault of those having the management of her. The cause was heard in the district court upon proofs taken on both sides. The facts as found by the court were these: The ship took on freight, at New Orleans, two hundred and sixty-seven bales of American hemp consigned to the libellants at New-York. She was moored at her dock in New-York on the afternoon of the 6th of June, 1844, and notice was given by her factors or agents in the public papers of the next and following days, that she would begin unlading her cargo on the 7th of June. The libellants had engaged storage for the hemp at a distance of from a mile and a half to a mile and three-quarters from the vessel. It rained on the morning of the 7th of June, but the rain ceased by or before 9 o'clock a. m. The ship began discharging her cargo about 9 o'clock a. m., and the hemp, lying uppermost, was first discharged. Personal notice was given to the libellants about 9 o'clock a. m., at their counting-house, that the ship had commenced discharging the hemp, but they refused to accept the hemp because the weather was unfavorable. At 10 a. m., the libellants sent a cart to the ship to ascertain if she was discharging the hemp. The cartman returned with a load, and reported that there was enough unloaded for three or four carts. At a quarter before 12 o'clock the libellants sent notice to Bucklin & Crane, the agents of the vessel, that they would not receive the hemp because of the bad weather, as it had the appearance of rain, and the agents then agreed to stop discharging the hemp and to send that notice to the ship, if the libellants would remove what had been discharged. The day was sultry and occasionally cloudy with appearance of rain, and after 3 o'clock p. m. a violent gust of rain came on suddenly. The unlading of the hemp continued till about 3 o'clock p. m., by which time it was all discharged from the ship. Notice was given at the ship at 12 o'clock by the libellants' cartmen that the agents had agreed to stop unlading at that time, and that the libellants would receive no more hemp than was then discharged. Two carts were put at work by the libellants before 12 o'clock, four more at 12, and one after 1 o'clock. More hemp was taken away from the wharf by the libellants than had been discharged at 12 o'clock, but it did not appear clearly whether the libellants succeeded in securing in store as many bales as were on the dock at 12 o'clock. The carts removed one hundred and sixty-three bales, one hundred and five of which were safely stored. Fifty-eight bales were injured by the rain in front of the store house, and one hundred and four bales were left at the dock where they were landed, and were

there damaged by the rain. Nothing was done by the ship to protect the hemp after it was landed. It is the established course and usage of the coasting trade at New-York to deliver goods on freight on the wharf.

The district court decided that in a well settled course of trade, such as existed in New-York, in relation to coasting vessels, the delivery of a cargo on the dock, with notice to its owners of the time and place of unlading, placed the cargo at their risk and discharged the vessel from liability; but that in case the cargo was addressed to a mere consignee, the vessel would be under the further obligation to secure the property after it was unladen, if no consignee appeared or if he refused to accept the goods; that independently of any special arrangement or agreement with the libellants in respect to the landing of the hemp, the law justified the method pursued by the ship; that the libellants had received as duly delivered all the hemp removed from the dock by their carts; but that under the agreement made by Bucklin & Crane with the libellants, the hemp damaged on the wharf was not delivered to the libellants so as to exonerate the ship, and they were entitled to recover the loss on that hemp. [Case No. 5,656.]

Upon the question of the agreement between the agents and the libellants, the opinion of the district court, delivered by Betts, District Judge, was as follows:

"As to the agreement of the agents not to unlade, the proof is that they agreed at a quarter before twelve o'clock to stop discharging the hemp and to send notice to the ship, if the libellants would remove what had been discharged, and it is proved that more was taken away by the libellants than had been discharged at twelve o'clock. The testimony on this point is not so certain as to enable the court to say that the libellants succeeded in securing in store as many bales as were on the dock at twelve o'clock.

"The argument for the vessel is that the agents had no authority to bind the ship by such an agreement. The evidence does not disclose clearly what was the exact character of the agency. It appears however that the agents represented themselves to be and acted as the consignees of the ship, announced the time and place of her unlading, collected the freight, and assumed to direct in the delivery of the cargo. The owner had it in his power to show what limitation, if any, there was to the authority of the consignees; and, in the absence of evidence qualifying their powers it must be assumed that they stood in the place of the owner, and were clothed with the direct and incidental authority of ship's-husband in respect to the delivery of the cargo and the collection of freight. A ship's-husband is ordinarily a part owner. Abb. Shipp. 69. But there is nothing in the character of his duties or the rules of the maritime law, limiting the office to an own-

er. Whatever may be the appropriate appellation of such agent, it is manifest, upon the authorities and the reason of the thing, that the party to whom a ship is consigned for the purpose of her proper entry and unlivery, and the collection of her freight, must have, as incident to that trust, the power of arranging, with consignees of the cargo, the time, place and manner of its delivery, and that, accordingly, his engagements to that end must be as obligatory as if made by the owner himself. Story, Ag. § 35, note; Story, Partn. § 418.

"The law assumes to regulate the mode of delivery, only when it is not stipulated by contract. Abb. Shipp. 248; Syeds v. Hay, 4 Term R. 260. It construes bills of lading which engage a direct and personal delivery of the goods, to mean that the delivery shall be according to the customs and usages of the trade; but it does not prevent the parties putting a different interpretation upon the obligation of affreightment by their own acts or stipulations.

"If, then, it was the right of the owner of the ship in this case to discharge the hemp at the ship's berth, immediately on giving notice to the consignees of the time and place of unlivery, yet it was equally competent for him to engage not to unlade before a particular day, or not faster than it was convenient for the consignees to receive it, or to stop the discharge at any period of the day; and a delivery in disregard of such engagement, left the ship still liable on the original shipment. The engagement of the agents was of the same efficacy as though it had been made by the owner himself. It was the right, then, of the libellants, under the agreement made with the agents of the ship, to refuse to receive more hemp than had been unladen at twelve o'clock. (The court then examined the evidence, which was conflicting, as to the number of bundles of hemp discharged by noon, the cartmen testifying to one hundred, and the stevedores to over two hundred. The court, after deciding that the true number was probably one hundred and twenty-five or one hundred and fifty, proceeded as follows:) But if only one hundred bales were unladen at the time, the libellants could waive the stipulation releasing them from receiving more than that quantity, and, in judgment of law, they are to be regarded as accepting, as properly delivered, all they took from the wharf." [Case No. 5,656.]

After a final decree in favor of the libellants, the claimant appealed to this court. The evidence here was substantially the same as in the court below.

Luther R. Marsh, for libellants.

Francis B. Cutting and Jesse C. Smith, for claimant.

NELSON, Circuit Justice. This case involves two questions of fact: First, wheth-

er the consignees of the ship agreed with the respondents to suspend any further discharge of hemp from the ship beyond the amount which had been discharged before noon. On the part of the libellants it is insisted, that the proofs establish the agreement, and on the part of the claimant that the proofs fall short of this. Most of the damage was done to the hemp which was discharged after one o'clock, it having been drenched by a shower between three and four o'clock p. m. The second question relates to the quantity of hemp discharged after the time when, as is alleged, the further discharge was, by the agreement, to cease. Both questions strike me as being exceedingly close upon the evidence, and are so nearly balanced that it would be wrong for an appellate court to interfere. According to the impression which the examination of the proofs has left upon my mind, I should not feel justified in disturbing the conclusions of the court below, whether for or against the appellant, in respect to either question, as I think different minds might very well arrive at different conclusions. To warrant a reversal upon a mere question of fact, the preponderance of the evidence should be of a somewhat decided character; such as would justify the granting of a new trial in a court of common law, on the ground that the verdict was against the weight of evidence. It seems to me that this principle should govern this court in reviewing a question of fact determined by the district court.

I cannot doubt that the consignees of the ship had authority to arrange with the owner or consignees of the cargo in respect to the time and manner of its delivery, and that the arrangement thus entered into for general convenience and the better security of the cargo, was not a personal matter between the parties to the agreement. The consignees of the ship had the control of her for the purpose of delivering the cargo, and could modify and regulate such delivery in any way consistent with the rights of those interested in the cargo. The case does not stand upon an independent agreement, speaking in a technical sense, but upon an understanding between the parties in respect to the delivery, on which the respondents had a right to rely, and the breach of which occasioned the damage. The decree must be affirmed, with costs.