### McGHEE et al. v. WHITE.

#### (Circuit Court of Appeals, Sixth Circuit. March 4, 1895.)

#### No. 230.

CONTRIBUTORY NEGLIGENCE—CROSSING RAILROAD TRACK.

One K. was driving towards a railroad crossing, at which, owing to the formation of the ground, an approaching train could be seen only for a short distance. When K. was about 40 yards from the crossing, a train passed. Immediately after, K. drove forward to cross the track, and, as the forward wheels of his wagon reached it, was struck by a second train following the first at a speed of about 20 miles an hour. It appeared that K. did not look before crossing the track to see if a second train was coming. *Held* that, in view of the unusual circumstance of a second train's following the first at so short a distance and so high a speed, the question of K.'s contributory negligence in failing to look, before crossing, was for the jury.

In Error to the Circuit Court of the United States for the District of Kentucky.

This was an action by William White, administrator of Green Kennedy, deceased, against Charles M. McGhee and Henry Fink, receivers of the East Tennessee, Virginia & Georgia Railway Company, to recover damages for negligence causing the death of said Kennedy. In the circuit court plaintiff recovered judgment. Defendants bring error. Affirmed.

. Plaintiffs in error were receivers of the East Tennessee, Virginia & Georgia Railway Company, and as such operated the Louisville Southern Railroad under a lease from the Louisville Southern Railroad Company to the East Tennessee, Virginia & Georgia Railway Company. While the road was being operated by the receivers, Green Kennedy, the intestate of the defendant in error, was killed by one of their trains in Lawrenceburg, Ky. The accident occurred at the point where the railway is crossed by the main road from Lawrenceburg to Frankfort, which runs from north to south. The railway track crosses the road diagonally from southeast to northwest within the corporate limits of Lawrenceburg, but outside of the more densely settled portion of the town. For a quarter of a mile south of this crossing there are no houses on either side of the turnpike except that of Mrs. Caldwell, which stands about 40 yards south of the crossing, and 20 feet east of the pike, and has the railroad at its rear as well as on its north side. Three hundred yards before reaching the crossing the railroad makes a curve in a cut. Whether a train running in this cut is hidden from a traveler on the pike was in dispute. The pike before it reaches the crossing is below the level of the railway, and reaches the railway on a grade. From a point upon the turnpike 20 feet south of the crossing, the railway track can be seen about 40 yards eastwardly from the crossing. The track west of the crossing is straight and level and in open ground for half to three-quarters of a mile. On the 26th of

August, 1892, Green Kennedy, seated in a wagon, was driving a horse and mule northwardly on the turnpike road just described towards the railroad crossing. Holly Meux, a colored boy, was sitting on the seat with Kennedy. As they approached the railway, a work train crossed. Kennedy stopped the wagon in front of Mrs. Caldwell's house, 40 yards from the track, and, as the work train passed, went on slowly towards the crossing. The mule and the horse were upon the track when a second train, a freight train following the work train, struck the mule, killed Kennedy instantly, and injured the boy Meux. Suit was brought in the circuit court of Anderson county, Ky., to recover damages, and it was removed by defendants to the court below, where a verdict was rendered in favor of the plaintiff for $4,500. Upon motion for new trial the court made an order granting the same, unless a remittitur was entered of $2,000. This was done, and judgment was rendered for the $2,500. Holly Meux, who was on the wagon with Kennedy, testified: "Just before we reached Mrs. Caldwell's house the work train passed over the crossing, and we slackened up, and stopped in front of Mrs. Caldwell's house. As soon as the train passed by, we drove up slowly to the crossing. I was looking at the train which had just passed, and it was going around the hill, as we approached the railroad crossing, and just before the mule on the right hand side was stepping on the track, I turned my head, and saw the train coming from the other side of the track, and hallooed to Green Kennedy to look out, and I was just about to jump out when the train struck the mule and wagon, and knocked me out on the ground near the fence." Henry Anderson testified for the plaintiff: "While I was looking in that direction I saw Green Kennedy and his team approaching the crossing from the south side, and it seemed to me that it was not more than a minute or two after the train passed, and before it got out of sight, until the second train appeared on the crossing and struck the team. I heard no whistle nor ringing of the bell on this last train. I am positive the whistle was not blown, and I did not see it at all until just about the time it struck the team. I immediately got up and walked down to the crossing, and when I got there I found that Green Kennedy was killed." Lula Kingston, who was approaching the crossing from the other side, from the north, and did not quite reach it before the second train passed, said: "I did not see at that time Green Kennedy nor his wagon and team near the railroad crossing, but after the train had passed I came back and saw where the wagon had been struck and a man was killed." Another witness, Mattie Sewell, testified that she was looking out of her window, through which she could see to the middle of the pike where the railway crossed it; that she followed the first train with her eye until a shadow came across in front of her, and she turned her head, and saw another train, which struck the wagon Green Kennedy was in. Claude Anderson, who was sitting on the fence just south of the crossing, said that he turned his head to look at the work train, and did not see the other train as it approached the crossing until just before it struck the wagon. "After Green Kennedy started in the direction of the railroad after the work train had passed, I did not notice him until just before the second train struck him. I do not know which way he was looking as he approached the crossing, as I was looking in the other direction, at the work train." For the defendant, Bertha Caldwell testified: "I heard the noise of the train and the bell ringing, and saw the train as it came around the curve. I looked to the pike, and saw a colored man driving a wagon with a horse and mule in it about twenty feet from the railroad track. I said to my mother, 'That man is driving his team onto the track; why don't he stop?' I saw him look around at the train as it was approaching the crossing, and I thought he would stop, but he whipped up his horses, and I screamed, and said to my mother, 'Why don't he stop?' Just then the mule went onto the track, and the engine struck the mule and fore wheel of the wagon on the right hand side, and I immediately ran out to see if the man was killed. If the colored man had tried to stop his team when I saw him look up at the approaching train, he could easily have avoided the accident, but he acted to me like he was trying to cross the track before the train reached him." This is substantially all the evidence as to the circumstances under which Green Kennedy approached the track. The evidence of most of the witnesses for the plaintiff tended to show that the train was running at the rate of about 20 miles an hour.

Edward Colston, George Hoadly, Jr., and C. A. Hardin, for plaintiffs in error.

John W. Rodman and James A. Violett, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts). It is contended on behalf of the plaintiffs in error that the uncontradicted evidence shows that Kennedy attempted, after seeing the freight train coming, to cross in advance of it. If this were true, it would have been the duty of the court below to charge the jury to return a verdict for the receivers. It is true that Bertha Caldwell is the only witness who testifies that she had in her sight Green Kennedy as he approached the crossing all the time until he was struck, and that she says that he saw the train, and attempted to get over before it, and whipped up his horses to do so. This is at variance with the statement of Holly Meux, who was in the wagon with Green Kennedy, and who says that they went slowly to the track. It is at variance also with the probabilities, for the evidence quite clearly establishes that Green Kennedy could not see the engine coming east until he was within 20 feet of the track, and until the engine was within 120 feet of the crossing. Miss Caldwell's story is that Kennedy, when 20 feet from the track with a locomotive rushing on him at the rate of 20 miles an hour and only 120 feet away, tried to cross in front of the engine with a mule team. The proof is that Kennedy's mule was stepping upon the track when the engine struck him. It is very improbable that, if Kennedy had seen the train coming, he would have attempted to cross when so far from the track that he could not reach it with his wagon wheels before the coming of the train. The presumption of fact, and of law, too, would be against the existence of such wanton and reckless negligence, and the plaintiff was entitled to have the jury weigh the credibility of Miss Caldwell's evidence in the light of the circumstances. If the jury found that Kennedy did not wantonly risk the danger, as Miss Caldwell testifies, then the only other explanation of the accident is that Kennedy did not look to see the train as it came. This is supported by Meux's statement that he hallooed to Kennedy to look out when he saw the train. The question which we have to decide is whether, if he did not look, he was necessarily guilty of contributory negligence. We think that the circumstances were such as to make this question one for the jury. The case is governed by the decision of this court in Railway Co. v. Farra (handed down Feb. 5, 1895) 66 Fed. 496, and by the decision of the supreme court in Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679.

The work train had passed over the crossing not more than one and a half minutes before Kennedy was struck, and he had good reason to believe, therefore, that another train was not following within so short a time and distance. The shortness of the time between the two trains is quite satisfactorily shown by a calculation based on the time it took Kennedy to reach the track from Mrs.

Caldwell's house, which he left as soon as the work train had passed. If Kennedy's team went at 3 miles an hour, and the train at 21 miles an hour, and they reached the crossing at the same time, Kennedy went in that distance but 40 yards, while the freight train must have gone seven times as fast, or 280 yards. This would indicate a distance of not more than a sixth or a seventh of a mile between the two trains, running at 20 miles an hour. This is very much less than the usual distance between trains running in the same direction, and is most dangerous. Kennedy might, therefore, reasonably presume that, in the 40 yards he had to go to reach the track, another train would not pass the crossing. At least, this circumstance prevents us from holding as a matter of law that his failure to look was contributory negligence. It required the submission of the issue to the jury. In French v. Railroad Co., 116 Mass. 537, the plaintiff's evidence tended to show that she was driving with care, and in approaching a railroad crossing saw a train pass, and saw no flagman, and received no warning that another car was coming. At a point 46 feet from the crossing she could have seen 46 feet in the direction from which the car came. At 30 feet from the crossing she could have seen the track for more than half a mile, but she did not look in that direction, and gave as a reason that she did not suppose that one train would follow another so closely. She was struck by some cars which were detached from the train that had passed, and which, without warning, followed the train over the crossing. The supreme judicial court of Massachusetts held that whether she was careless in failing to look up the track at the points near the crossing where it was possible was a question for the jury to determine under the peculiar circumstances of the case. We reach the same conclusion in this case. This is a stronger case than that of Railway Co. v. Ives, and a stronger case than that of Railway Co. v. Farra, already decided in this court. The case of Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85, is not in conflict. There the foreman of a section gang, with 10 years' experience on a railway, in expectation of a coming freight train had placed his hand car on a siding. The train came from the west, and made a double flying switch at the station. After the first section had passed, the foreman, who was standing 4 or 5 feet from the track talking with one of his men, walked hastily on to the track without looking, and was struck by the rear section of the train, which was moving very slowly along the track. When he started to cross the track the approaching section was not 25 or 30 feet from him. It was held that he was guilty of contributory negligence as a matter of law, and the verdict directed for the defendant was sustained by the supreme court. The fact that the man was a section boss, well acquainted with the customs of the railroad company, and therefore charged with the knowledge that such a flying switch was possible or probable, made it his duty necessarily to look both ways upon the track before stepping across it. The case is a very different one from the one at bar, in that what caused the death there was something which the person

killed had reason to expect, whereas here the proximity of the two trains on the same track following each other was not only unusual, but was attended with much danger to the persons on both trains. Error is assigned to the action of the court in excluding an exclamation of the witness Bertha Caldwell, when she saw Kennedy driving upon the track. She testified that she said to her mother, "That man is driving his team onto the track; why don't he stop?" It does not seem to us that this evidence was very material, in any aspect of the case. It only showed that she was looking at Kennedy, but did not show where he was looking. The exclamation was quite consistent with his not seeing the train, and we do not think that its exclusion, even if erroneous, was material error. The judgment of the court below is affirmed.