## THE CITY OF NAPLES.

## GILCHRIST et al. v. EUSTROM.

(Circuit Court of Appeals, Eighth Circuit.    August 26, 1895.)

### No. 536.

1. NEGLIGENCE—EVIDENCE—PRESUMPTION OF CARE.

Libelant, an inspector of grain, while in the discharge of his official duty of inspecting a vessel preparatory to shipping a cargo of grain, fell down a hatchway in the lower deck of the vessel, and was injured. He testified that he followed the directions of the captain of the vessel in going to the place where the accident occurred, and that the lower deck was only lighted by two candles at a considerable distance from the hatchway into which he fell, and which was invisible in the darkness, though he was exercising great care. The captain and crew of the vessel testified that the deck was well lighted by numerous lanterns and candles, some of them placed immediately around the hatchway. *Held* that, upon this conflict of evidence, a finding in favor of libelant by the district judge, who saw and heard the witnesses, supported by the presumption against a reckless disregard of his own safety on libelant's part, would not be disturbed on appeal.

2. ADMIRALTY PRACTICE—TIME FOR APPEAL.

Under section 11 of the act of congress of March 3, 1891 (26 Stat. 829), an appeal to the circuit court of appeals in an admiralty proceeding may be taken at any time within six months after the entry of the order, judgment, or decree sought to be reviewed.

Appeal from the District Court of the United States for the District of Minnesota.

This is an appeal from a decree in admiralty in the district court of the United States for the district of Minnesota, Fifth division. The action is one for damages for personal injuries received by the appellee by falling through an open lower hatchway on the steamship City of Naples, while she was lying at her dock at West Superior, Wis., about to receive a cargo of wheat from an elevator at that place, on the 22d day of May, 1893, at about 3 o'clock p. m. It was tried by the court without a jury, and a decree rendered in favor of the libelant for $2,000, and costs, and against Joseph C. Gilchrist and Alexander McDougall and A. R. McFarlane, stipulators on the bond given for the release of the vessel. 61 Fed. 1012. For about three years prior to the accident the libelant had been employed by the state grain inspection department of the state of Minnesota as a grain inspector, and from the 8th day of September, 1892, up to the 22d day of May, 1893, during the navigation season, he had been engaged in inspecting vessels at the ports of Duluth and Superior relative to the conditions of their holds to receive cargoes of grain for shipment. The City of Naples was a vessel of the usual type of lake vessels, of about 2,000 tons burden, and about 300 feet in length, having two decks, provided with nine cargo hatches, numbered from 1 to 9, beginning forward with hatch No. 1, and numbering aft in consecutive order; the hatches of the lower deck being directly beneath those of the upper deck. There was a permanent stairway extending from the upper deck to the lower deck in hatchway No. 1, which was the usual method of ascending from and descending to the lower deck. There was also a stairway extending from the forecastle on the port side down into the forward compartment in the bows of the vessel, which was sometimes used by the crew to go below, but was not the usual method. The libelant was on the vessel, and went through, examining the hold and the space between decks on Sunday, and on Monday he came aboard for the purpose of inspecting the vessel preparatory to her receiving a cargo of wheat; a rain the night before, when the hatches were up, having made the inspection necessary. He was on the upper deck, and attempted to swing himself down to the lower deck through hatch No. 7 by putting his hands on the combings, when he was told

by the master of the vessel not to go down that way, and thereupon he went forward on the port side to the forecastle stairway, and descended into the forward compartment, and, proceeding aft through the bulkhead door, fell into hatch No. 1, which was open, and received the injuries complained of.

The libelant testifies that the master directed him to go down the forecastle stairway, but the master denies this. A brief summary of the libelant's testimony is to the effect that he went to the second deck by the route he was directed to go by the master of the vessel; that upon passing through the bulkhead door he found the lower deck dark; that he saw what he took to be the light made by a candle some 20 or 25 feet from the bulkhead door, and supposed that it marked the location of the first hatchway, as there were no other lights visible in that part of the deck; that he looked, but could see nothing but darkness at his feet; that he started for the light which he saw, walking slowly, with his feet close to the floor, so he would not run onto anything before he got to the light; that he had not gone more than two steps before he fell into the hatchway; that there were no lights whatever around or near the hatchway; that in the entire lower deck there were no lights, except the feeble lights made by two candles, one 20 or 25 feet from the door by which he entered, and towards which he was cautiously feeling his way when he fell into the hatchway, and the other at the opposite end of the deck; and that these two lights did not dispel the darkness, and did not give out sufficient light to disclose the location of the hatchway to the most careful observer. On the other hand, the master and crew of the vessel, or some of them, testify that the lower deck was well lighted with 12 or 15 lanterns and 50 or 60 candles, and that there were 3 lanterns around or near the first hatchway, and a candle at each corner thereof, which plainly and clearly disclosed its location to one entering that deck by the bulkhead door. It is highly probable that the lower deck had been well lighted in the morning or forenoon, when the crew were at work there, but, conceding this to be so, the question remains whether the lights were left burning until the middle of the afternoon, when the appellee received his injury. The libelant complains that the master of the vessel was negligent in directing him, without cautioning or warning him of the danger, to go down without a lantern or guide, by an unusual route, to the lower deck, which was not lighted, and at or near the entrance to which was an open, unlighted hatchway, without guards or combings. The district court awarded the libelant $2,000 damages, from which decree this appeal was taken.

Herbert R. Spencer, for appellants.

John C. Hollenbeck, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Before considering the case on its merits, it is proper to notice a motion filed by the appellee to dismiss the appeal. It is said that this court erred in allowing, on proper petition for that purpose, Alexander McDougall and A. R. McFarlane as sureties on the bond given for the release of the vessel, to be made parties appellant in the cause; that the appeal was not taken in time; and that the assignments of error are not sufficiently specific. The order mentioned was made after argument and due consideration on the authority of Coasting Co. v. Tolson, 136 U. S. 572, 10 Sup. Ct. 1063, and we see no reason to change our views on the question. Hardee v. Wilson, 13 Sup. Ct. 39; Insurance Co. v. Pendleton, 115 U. S. 339, 6 Sup. Ct. 74; The appeal was taken within six months, and is in time. Ben. Adm. (3d Ed.) § 622; Act Cong. March 3, 1891 (26 Stat. 829), § 11. If there is anything inconsistent with this holding in admiralty rule 45

(adopted in 1842), it must give way to section 11 of the act of congress above cited.

The assignments of error, while not as specific as they might have been, are, we think, sufficient. The libelant was rightfully and properly on the vessel in the discharge of his official duty as an inspector of vessels about to receive cargoes of grain. The master of the vessel knew that the libelant had come on board to discharge his official duty as inspector, and he knew what was necessary to enable him to discharge that duty efficiently and properly. A guide with a light, or well-lighted hatches and hold, were indispensable to a safe and intelligent discharge of this duty. No guide was .tendered, and the libelant testifies that the lower deck and hatchway were not lighted. We do not find that the libelant knew the exact location of hatch No. 1, through which he fell, nor do we think he knew the location of this hatch with reference to the door through which he entered to the lower deck. He had never gone down this stairway before. It would serve no useful purpose to set out and discuss the evidence in detail. It is voluminous and 'conflicting. We have read it all very carefully, and, applying the well-settled rule in this class of cases, we are not able to say the learned district judge erred in his conclusions on the facts of the case. He saw and heard the witnesses testify, and was, therefore, in a much better position to judge of their intelligence and credibility than this court. The weight of evidence is not determined by the number of witnesses, but by their intelligence and credibility. Hence it is an established rule that when an appeal in admiralty involves only questions of fact dependent upon conflicting testimony, the decree of the district judge, who has had the opportunity of seeing the witnesses and judging of their intelligence and veracity from their appearance and demeanor on the stand, will not be reversed unless the appellate court can clearly see that the decree was against the weight of evidence. The preponderance of the evidence must be such as would justify the granting of a new trial in a court of common law on the ground that the verdict was against the weight of evidence. The Grafton, 1 Blatchf. 173, Fed. Cas. No. 5,655; Post v. Steamship Co., 48 Fed. 565; The Jersey City, 1 U. S. App. 244, 2 C. C. A. 365, 51 Fed. 527; Levy v. The Thomas Melville, 37 Fed. 272; The Saratoga, 40 Fed. 509; Anderson v. The Ashbrooke, 44 Fed. 124.

It is insisted with great earnestness that the libelant's injuries were the result of his own negligence in stepping into a hatchway which was well lighted, and which he must have seen; but the libelant denies that the hatchway was lighted, or that he saw it, or that he could have seen it by the exercise of the utmost diligence. This positive testimony of the libelant is. strengthened and corroborated by the presumption of fact that the libelant, in the full possession of his senses, would not have deliberately walked into an open hatch which was well lighted and plainly visible. He knew the vessel had open hatchways, and knew that he would be seriously injured, if not killed, by stepping into one of them. Knowing these facts, the natural instinct of self-preservation would prompt him to avoid the danger by the exercise of due care. If the libelant had been killed by

the fall, the presumption arising from this natural instinct of self-preservation would have stood in the place of positive evidence, and would have been sufficient to warrant a recovery in the absence of countervailing testimony. Johnson v. Railroad Co., 20 N. Y. 65, 69. The probative force of this presumption in suits for personal injuries where the defense is contributory negligence has been recognized and enforced in many cases. We cite and quote from some of them.

"The natural instinct," says Agnew, J., in Allen v. Willard, 57 Pa. St. 374, 380, "which leads men in their sober senses to avoid injury and preserve life, is an element of evidence. In all questions touching the conduct of men, motives, feelings, and natural instincts are allowed to have their weight, and to constitute evidence for the consideration of courts and juries."

In the case of Railway Co. v. Price, 29 Md. 420, 438, the court said:

"These facts and the circumstances of the case were proper to be considered by the jury, and in connection with these facts and circumstances it was competent to the jury to infer the absence of fault on the part of the deceased from the general and known disposition of men to take care of themselves, and to keep out of the way of difficulty and danger."

In the case of Railroad Co. v. Nowicki, 46 Ill. App. 566, the court said:

"While it is true that in an action for personal injuries, based upon the negligence of the defendant, it is an essential element of the plaintiff's case that the injured party must have been in the exercise of ordinary care, yet it is not indispensable that such fact should be directly shown by affirmative evidence. There is in all men a natural instinct of self-preservation, and such instinct is an element of evidence of which the jury may take notice, and, in the absence of all testimony upon the subject, find that a deceased party, in obedience to the ordinary instincts of mankind, exercised that care for his safety which a prudent man would, under the same conditions, have made use of."

In the case of McGhee v. White, 66 Fed. 502, 13 C. C. A. 608, a witness testified that the deceased saw the train, and attempted to get over before it, and whipped up his horses to do so. The circuit court of appeals conceded that "if this were true it would have been the duty of the court below to charge the jury to return a verdict for the receivers." But the court said:

"It is very improbable that, if Kennedy had seen the train coming, he would have attempted to cross when so far from the track that he could not reach it with his wagon wheels before the coming of the train. The presumption of fact, and of law, too, would be against the existence of such wanton and reckless negligence, and the plaintiff was entitled to have the jury weigh the credibility of Miss Caldwell's evidence in the light of the circumstances."

The libelant was not on the vessel as a mere licensee. He was there in the discharge of an official duty in which the vessel itself had an interest, for it could not receive its cargo until it had been inspected. The right and duty of the libelant to inspect the vessel did not authorize him to take command of her, or to give orders to her crew to prepare her for inspection, or to light up the vessel for that purpose. It was the master's duty to prepare the vessel for inspection, and furnish what was necessary and proper for that purpose, and to exercise reasonable precaution for the safety of the libelant while

in the discharge of his official duties. In the assessment of damages the district judge found "the libelant was not free from fault," and "that the rule in admiralty for the apportionment of damages must prevail in this case," and, applying that rule, assessed the libelant's damages at $2,000. If the libelant is entitled to recover damages at all, the sum awarded by the district court is reasonable.

The decree of the district court is affirmed.