[No. 25282. *En Banc.* April 24, 1935.]

H. F. KARP, *as Administrator, Respondent,* v. P. L. HERDER *et al., Appellants.*[1]

*Roberts & Skeel* and *Frank Hunter,* for appellants.

*George Olson* and *George F. Hannan,* for respondent.

BLAKE, J.—Plaintiff's intestate was killed as the result of a collision between a car which she was driving and one driven by defendant Herder. The colli-

[1] Reported in 44 P. (2d) 808.

sion occurred on the Olympic highway, about two miles east of Port Angeles, at or near the point where a highway called Baker street enters the Olympic highway from the north.

The Olympic highway is an arterial highway extending east and west. Baker street is an unpaved non-arterial highway, and does not extend south of the Olympic highway. We shall, however, refer to the juncture of the two highways as "the intersection." There was a stop sign on the west side of Baker street, thirty feet north of the north line of the Olympic highway. At the northeast corner of the intersection, there was a high embankment. Because of this embankment, it was impossible for one approaching on Baker street to see any considerable distance to the east until the front of his car was within three or four feet of the pavement on the Olympic highway.

The collision occurred at or just east of the intersection. It is defendants' contention that the collision occurred within the intersection. It is plaintiff's contention that the collision occurred east of the intersection, after Mrs. Karp had made the turn from Baker street onto the Olympic highway, and after her car was headed east and was wholly on the south side of the latter highway.

The cause was tried to a jury, which returned a verdict in favor of the plaintiff. From judgment on the verdict, defendants appeal.

The errors assigned by appellants may be discussed under three groups: (1) Denial by the court of their challenge to the sufficiency of the evidence at the close of respondent's case; denial of their motion for a directed verdict, or, in the alternative, for judgment of dismissal at the close of all the evidence; denial of their motion for judgment notwithstanding the ver-

dict; (2) denial of their motion for new trial; and (3) error in the giving of two instructions.

I. In considering the first group of errors, it hardly seems necessary to reiterate that we are bound to view them in the aspect of the evidence most favorable to respondent. There was ample evidence to warrant the jury in finding that Herder was driving at an excessive rate of speed—sixty miles per hour. As to the point of collision and position of the cars at the time of collision, there was the testimony of two witnesses who professed to see it. One, Robertson, testified on behalf of respondent; the other, Hoare, testified on behalf of appellants.

Robertson testified that he was driving east on the Olympic highway; that, when he first observed Mrs. Karp's car, it was about one hundred yards ahead of him, also going east; that her car was wholly on the south side (her right side) of the center line of the Olympic highway; that Herder, coming from the east, ran head-on into Mrs. Karp's car; that, when he (Robertson) arrived at the place of collision, he found Mrs. Karp lying on the pavement on the south side of the Olympic highway at a point some fifteen feet east of the east line of Baker street; that she was bleeding profusely; that debris from the wrecked cars was scattered along the south side of the Olympic highway; that Herder's car came to rest upside down off to the south of the highway at a point within the lines of Baker street if it extended south of the Olympic highway; that the Karp car came to rest headed north—its rear wheels still on the pavement, with its front end headed into the east side of Baker street. Robertson's testimony was corroborated in several respects by other witnesses. One testified to finding blood stains on the pavement at about the point where Robertson testified he found Mrs. Karp lying. Two

corroborated him as to debris and wreckage lying on the south side of the Olympic highway.

Now, if all this evidence is to be believed (and the jury did believe it), this was not an intersection collision at all. According to this evidence, Mrs. Karp had gotten out of the intersection and had become a traveler on the Olympic highway, occupying only that portion of the highway which, under the law, she was entitled to use. While in this position, she was struck by Herder, who was on what, for him, was the wrong side of the road. Accepting this version of the collision, it seems to us clear that Herder was negligent and Mrs. Karp was not guilty of contributory negligence.

Appellants' version of the collision all tended to show that it occurred in the intersection, as Mrs. Karp was entering the Olympic highway from Baker street. Appellants contend that the physical facts support their version. The difficulty with this contention is that there is controversy over the physical facts, namely, blood marks on the pavement, the positions of the two cars when they came to rest, and the places where wreckage from the cars was cast. While it would appear from the photographs in evidence that the right front end of Herder's car struck the left front end of Mrs. Karp's, and that there was blood on the pavement to the east of the intersection (thus tending to support appellants' version of the collision), we cannot say that the physical facts are such as are determinative of the questions of negligence and contributory negligence as a matter of law. *Lewis v. Spokane,* 124 Wash. 684, 215 Pac. 36.

II. Appellants contend that the verdict was against the weight of the evidence, and consequently their motion for new trial should have been granted. The trial court, in passing on the motion for new trial,

remarked that, had it been the trier of the facts, it would have reached a different conclusion than did the jury. It does not follow, however, that the verdict is against the weight of the evidence, or that the trial court abused its discretion in denying the motion for new trial. *Ritter v. Seattle,* 82 Wash. 325, 144 Pac. 61.

As we have seen, the verdict was grounded upon substantial evidence. In such case, we cannot say the trial court abused its discretion in denying a motion for new trial, even though it might seem to us the weight of the evidence was against the verdict.

■ III. The court instructed the jury to the effect that it was the duty of Herder to keep his car "under such control so that he would not run into and collide with other vehicles on the highway." Appellants assert this instruction fixed a measure of duty on Herder with which it was impossible to comply. This argument is predicated wholly upon the theory that the collision occurred at the place and in the manner claimed by appellants. It seems to us too plain for argument that the instruction was proper upon respondent's version of the collision.

■ Presenting appellants' version of the collision, the court instructed the jury, among other things, that it was Mrs. Karp's duty to yield the right of way to Herder. The court then added:

"The law presumes that at the time and place in question, and at this intersection, the deceased did yield the right of way to the defendant. This, however, is merely a presumption and may be overcome by the evidence in this case to the contrary, if there is such evidence, but it continues as a presumption until it has been overcome by the evidence in the case."

Appellants contend that error was committed in giving the quoted portion of the instruction, because there was positive testimony to the effect that Mrs. Karp did not stop before entering the Olympic high-

way, and did not yield the right of way to Herder. The witness Hoare did testify to that effect.

In many jurisdictions the presumption of due care on the part of a deceased persons falls and loses its force completely upon the introduction of positive evidence to the contrary. Language may be found in many of our own cases from which it might be inferred that such is the rule in this jurisdiction, as, for example, in *Reinhart v. Oregon-Washington R. & N. Co.,* 174 Wash. 320, 24 P. (2d) 615, where it said:

"The presumption of due care may be overcome by the direct testimony of disinterested witnesses, but it is not overcome by the testimony of interested witnesses, or from inferences that may be drawn from circumstantial facts."

The rule contended for by appellants, however, does not prevail in all jurisdictions where contributory negligence is an affirmative defense, and the burden of proving it is on the defendant. *McGhee v. White,* 66 Fed. 502; *Northern Pacific R. Co. v. Spike,* 121 Fed. 44. In the latter case, decided by the eighth circuit court of appeals, it was said:

"The rule is well settled that where the accident results in instant death, as it did in this case, 'the law, out of regard to the instinct of self-preservation, presumes the deceased was at the time in the exercise of due care, and this presumption is not overthrown by the mere fact of injury. The burden rests upon the defendant to rebut this presumption.' *Flynn v. Railroad Co.,* 78 Mo. 195, 212, 47 Am. Rep. 99.

"The presumption arising from this natural instinct of self-preservation stands in the place of positive evidence, and is sufficient to warrant a recovery in the absence of countervailing testimony. *Johnson v. Railroad Co.,* 20 N. Y. 65, 69, 75 Am. Dec. 375; *Oldfield v. N. Y. & Harlem R. Co.,* 14 N. Y. 310; *Adams v. Iron Cliffs Co.* (Mich.) 44 N. W. 270, 18 Am. St. Rep. 441; *Railway Co. v. State,* 29 Md. 420, 438, 96 Am. Rep. 545; *Railroad Co. v. Nowicki,* 46 Ill. App. 566; *The City of*

*Naples,* 32 U. S. App. 613, 16 C. C. A. 421, 69 Fed. 794; *Allen v. Willard,* 57 Pa. 374; *Schum v. Railroad Co.,* 107 Pa. 8, 52 Am. Rep. 468; *Cox v. R. Co.* (N. C.) 31 S. E. 848; *Cameron v. Railway Co.* (N. D.) 77 N. W. 1016. Nor is this presumption applied only when no one witnesses the accident. It has its application in all cases, and may be strong enough to overcome the testimony of an eyewitness.''

In the former case, the late Chief Justice Taft, then a member of the sixth circuit court of appeals, said:

''It is true that Bertha Caldwell is the only witness who testifies that she had in her sight Green Kennedy as he approached the crossing all the time until he was struck, and that she says that he saw the train, and attempted to get over before it, and whipped up his horses to do so. . . . The presumption of fact, and of law, too, would be against the existence of such wanton and reckless negligence, and the plaintiff was entitled to have the jury weigh the credibility of Miss Caldwell's evidence in the light of the circumstances. If the jury found that Kennedy did not wantonly risk the danger, as Miss Caldwell testifies, then the only other explanation of the accident is that Kennedy did not look to see the train as it came. This is supported by Meux's statement that he hallooed to Kennedy to look out when he saw the train. The question which we have to decide is whether, if he did not look, he was necessarily guilty of contributory negligence. We think that the circumstances were such as to make this question one for the jury. The case is governed by the decision of this court in *Railway Co. v. Farra* (handed down Feb. 5, 1895), 66 Fed. 496, and by the decision of the supreme court in *Railway Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679.''

This court has recently recognized the rule thus stated in the case of *Smith v. Seattle,* 178 Wash. 477, 35 P. (2d) 27, where it was said:

''There is a presumption that the deceased was in the exercise of due care, and this presumption is not overcome by the testimony of the motorman, which

was disputed by other witnesses, even though it be assumed that he was not an interested witness, or the testimony of the passenger upon the street car, which was likewise disputed. Contributory negligence is an affirmative defense, and the burden was upon the appellant to establish that by a preponderance of the evidence. The question of contributory negligence was one of fact for the jury, and not one of law for the court.''

And in the early case of *Steele v. Northern Pacific R. Co.*, 21 Wash. 287, 57 Pac. 820, this court approved an instruction which, in principle at least, is in no essential respect different from the one given in the instant case. The instruction in that case was as follows:

''I instruct you that the plaintiff, Harry Steele, need not affirmatively prove that he stopped, looked, and listened. The presumption is that he did so, and the burden of proof that he did not stop, look, and listen is on the defendant railway company, and must be proved by a preponderance of the testimony on its part.''

Judge Dunbar, speaking for the court, said of it:

''The settled law of this state is to the effect that contributory negligence is a defense. But it is contended by the appellant that, where the facts are developed by the plaintiff himself which show contributory negligence, the defendant is entitled to avail itself of such facts, and consequently no presumption arises. We have just indicated that the facts developed by the plaintiff did not show contributory negligence, and therefore the criticism of the appellant is not warranted, so far as this instruction is concerned.''

The following of our cases are in harmony with the rule as thus stated: *Brandt v. Northern Pacific Ry. Co.*, 105 Wash. 138, 177 Pac. 806, 181 Pac. 682; *Smith v. Inland Empire R. Co.*, 114 Wash. 441, 195 Pac. 236; *Swanson v. Puget Sound Electric Railway*, 118 Wash.

4, 202 Pac. 264; *Mattingley v. Oregon-Washington R.
& N. Co.*, 153 Wash. 514, 280 Pac. 46; *Peterson v. Great
Northern R. Co.*, 166 Wash. 538, 7 P. (2d) 963; *Eaton
v. Hewitt*, 171 Wash. 260, 17 P. (2d) 906.

The instant case is one where the rule stated is pecu-
liarly applicable. There are some features of Hoare's
testimony which do not seem plausible, even in the
printed record. He was an auto mechanic. He testi-
fied that he was trying out a car which he had just
overhauled; that he was parked, heading north, on
the east side of the Baker road, opposite the stop sign;
that his motor was running; that he observed Mrs.
Karp's car approaching from the north and was wait-
ing for her to pass before getting out to make some
adjustments to his motor; that she was traveling five
or six miles per hour as she passed him; that there
was shrubbery in the back of her car, which caused him
to turn in his seat and follow her with his eyes until
the moment of collision; that she entered the Olympic
highway without stopping.

Whether this story was true, partially true, or false,
was for the jury, and not the court, to say. If taken
at its face value, it, of course, was sufficient to over-
come the presumption of due care on the part of Mrs.
Karp. If not so accepted, it was not sufficient. The
court properly left the question for the determination
of the jury.

Judgment affirmed.

MILLARD, C. J., MAIN, MITCHELL, and HOLCOMB, JJ.,
concur.

BEALS, J. (dissenting)—In my opinion, the trial
court erred in instructing the jury that the law pre-
sumed that the deceased yielded the right of way to
the defendant. The presumption referred to undoubt-
edly exists, and operates, under certain conditions, to

carry a plaintiff's case successfully past a motion for nonsuit and to the jury. This happens, as in the case of *Reinhart v. Oregon-Washington R. & Navigation Co.*, 174 Wash. 320, 24 P. (2d) 615, referred to in the majority opinion, where there is no direct testimony from disinterested witnesses as to the degree of care exercised by the deceased. In the case at bar, there was direct testimony from a disinterested witness as to Mrs. Karp's actions just before and at the time she drove into the intersection. The weight of this testimony was for the jury, but in the face thereof, the presumption that Mrs. Karp had used due care disappeared, and the question was left for the jury to determine from the evidence alone.

The presumption with which we are here concerned functions in the absence of testimony from disinterested witnesses, because without such a presumption, just as in cases where the doctrine of *res ipsa loquitur* is applied, direct testimony being unavailable, many cases which should be passed on by the trier of the facts could not reach that stage of the proceedings, because evidence upon an essential point would be wanting. It is a perfectly logical proposition to assume that most men exercise reasonable care in the ordinary happenings of human life; and that, consequently, upon some particular occasion it should be presumed that one who suffered death in an accident did, on that occasion, use reasonable care. Such a presumption, however, has no probative value as evidence. It operates, in the absence of evidence, upon the basis above stated.

Following extracts from well-known text writers are of interest in this connection:

"The second class of presumption of law, answering to the *presumptiones juris* of the Roman law, which may always be overcome by opposing proof, consists of those termed disputable presumptions. These, as well as the former, are the result of the general experi-

ence of a connection between certain facts, or things, the one being usually found to be the companion or the effect of the other. The connection, however, in this class, is not so intimate, nor so nearly universal, as to render it expedient that it should be absolutely and imperatively presumed to exist in every case, all evidence to the contrary being rejected; but yet it is so general, and so nearly universal, that the law itself, without the aid of a jury, infers the one fact from the proved existence, of the other, in the absence of all opposing evidence. In this mode, the law defines the nature and amount of the evidence which it deems sufficient to establish a *prima facie* case, and to throw the burden of proof on the other party; and, if no opposing evidence is offered, the jury are bound to find in favor of the presumption." 1 Greenleaf on Evidence (16th ed.), p. 127, § 33.

"In most instances, however, presumptions generally are referred to as 'rules of evidence,' or as 'mere rules of evidence.' And the present weight of authority is to the effect that even the presumption of innocence is but a rule of evidence and not, of itself, of any probative force or weight. The better reasoned authorities hold that a presumption is not evidence of a fact, but purely a conclusion, having no probative force, and designed only to sustain the burden of proof until evidence is introduced tending to overcome it

" 'A presumption,' it is said, 'cannot in itself possess probative weight, but merely necessitates evidence to meet the *prima facie* case which it creates. When evidence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed'." 1 Jones Commentaries on Evidence (2d ed.), p. 58, § 30.

"A presumption, as already noticed, is in its characteristic feature a rule of law laid down by the judge, and attaching to one evidentiary fact certain procedural consequences as to the duty of production of other evidence by the opponent. It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact; but the presumption is not the fact itself, nor the inference itself, but the

legal consequence attached to it." 5 Wigmore on Evidence (2d ed.), p. 450, § 2491.

As to the weight attached to such presumptions as that with which we are here concerned, and the effect of some evidence as to a contrary state of facts, the following texts, it seems to me, state the true rule:

"As shown in a preceding section, by the better-reasoned authorities, presumptions, including even the presumption of innocence, are not themselves evidence. Courts have frequently remarked that presumptions are only intended to take the place of facts, and cannot be relied upon where the facts are shown; or that no presumption can stand in the face of facts. According to such authorities a presumption is an artificial thing, a mere house of cards, which one moment stands with sufficient force to determine an issue, but at the next, by reason of the slightest rebutting evidence, topples utterly out of consideration of the trier of facts." 1 Jones Commentaries on Evidence (2d ed.), p. 61, § 32.

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule.

"It is therefore a fallacy to attribute (as do some judges) an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with *some* evidence to the contrary. For example, if death be the issue, and the fact of absence of seven years unheard from be conceded, but the opponent offers evidence that the absentee, before leaving, proclaimed his intention of staying away for ten years, until a prosecution for crime was barred, this satisfies the opponent's duty of producing evidence, removing the rule

of law; and when the case goes to the jury, they are at liberty to give any probative force they think fit to the fact of absence for seven years unheard from. It is not weighed down with any artificial additional probative effect; they may estimate it for just such intrinsic effect as it seems to have under all the circumstances. This much is a plain consequence in our mode of jury trial; and the fallacy has arisen through attempting to follow the ancient Continental phraseology, which grew up under the quantitative system of evidence (ante § 2032) fixing artificial rules for the judge's measurement of proof." 5 Wigmore on Evidence (2d ed.), § 2491.

The trial court, in the case at bar, by instructing the jury that the law presumed that the deceased had yielded the right of way to the defendant, there being direct testimony from a disinterested witness that she had not, allowed the jury to choose between the factual testimony on the one hand and the presumption on the other, thereby giving to the presumption actual force and weight as evidence, and giving it a false value and, under the circumstances disclosed by the record here, undue weight. It is easy to understand the danger of such an instruction as that here presented. The court tells the jury that the law presumes that the deceased did yield the right of way. The jury may well believe that, under this instruction, a high degree of proof is required to overcome the legal presumption. The danger of such a situation is well stated in 1 Jones on Evidence (2d ed.), § 32, p. 63, as follows:

"It may well be regarded as dangerous in any event to instruct laymen that a rule of law is to be considered by them as controlling, to some unstated degree, the weight of particular evidence. For a presumption, in the strict sense, is nothing more than a rule of law. It may or may not embody within it a logical as well as a legal or technical deduction. Viewing it solely in its legal aspect, however, it is neither designed nor intended to have weight as substantive evidence."

This court, in the case of *Scarpelli v. Washington Water Power Co.,* 63 Wash. 18, 114 Pac. 870, held that a presumption of law was not effective in the face of *prima facie* evidence introduced by the party against whom the presumption operates. We quoted with approval from the case of *Peters v. Lohr,* 24 S. D. 605, 124 N. W. 853, in which the supreme court of South Dakota said:

"A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced *prima facie* evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponents' *prima facie* evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion. Elliott, Ev. §§ 91, 92, 93; Wigmore, Ev. §§ 2490, 2491."

In the later case of *Beeman v. Puget Sound Traction L. & P. Co.,* 79 Wash. 137, 139 Pac. 1087, this court said:

"Presumptions are indulged when certain proof is wanting; they are never allowed to displace facts.

" ' "Presumptions" as happily stated by a scholarly counselor *ore tenus,* in another case, "may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." That presumptions have no place in the presence of actual facts disclosed to the jury, or where plaintiff should have known the facts had he exercised ordinary care, is held in many cases, of which samples are, *Reno v. Railroad,* 180 Mo. l. c. 483; *Nixon v. Railroad,* 141 Mo. l. c. 439; *Bragg v. Railroad,* 192 Mo. 331. To give place to presumptions on the facts of this case, is but to

play with shadows and reject substance.' *Paul v. United Rys. Co.*, 152 Mo. App. 577, 134 S. W. 3.''

In the case of *Anning v. Rothschild & Co.*, 130 Wash. 232, 226 Pac. 1013, in considering the effect of a presumption very similar to that now under consideration, we referred to the case of *Scarpelli v. Washington Water Power Co., supra,* and the quotation from the supreme court of South Dakota above set forth, holding that the presumption had been removed by positive testimony of disinterested witnesses.

The following opinions of this court are also in point in this connection: *Feldtman v. Russak,* 141 Wash. 287, 251 Pac. 572; *McMullen v. Warren Motor Company,* 174 Wash. 454, 25 P. (2d) 99; *Carlson v. Seattle,* 175 Wash. 388, 27 P. (2d) 717; *Spokane County v. Great Northern Railway Co.,* 178 Wash. 389, 35 P. (2d) 1; *Bise v. St. Luke's Hospital, ante* p. 269, 43 P. (2d) 4.

In the case of *Duggan v. Bay State St. Ry. Co.,* 230 Mass. 370, 119 N. E. 757, the supreme court of Massachusetts, referring to a similar situation, said:

''The presumption of due care created by the statute is not itself evidence. It is a simple rule to which resort is had when there is a failure of evidence. A presumption ordinarily is not evidence, but is a rule about evidence. . . . The presumption of the present statute is merely like numerous other presumptions. It stands only until the facts are shown.''

In the case of *Board of Water Commissioners v. Robbins,* 82 Conn. 623, 74 Atl. 938, the supreme court of Connecticut used the following language:

''Presumptions like that appealed to [officials act honestly] have no probative force. They perform an office in the absence of evidence, so that one who has cast upon him the burden of proof as to a given proposition may be enabled to sustain that burden upon the strength of a presumption without the presen-

tation of proof. When such a presumption is advanced in favor of one upon whom the burden of proof does not rest, it really adds nothing to the duty or burden of the other party, since the latter is already under the obligation to present proof in support of his contention, and the presumption only reiterates that obligation.''

The supreme court of Utah, in the case of *Ryan v. Union Pacific Ry. Co.*, 46 Utah 530, 151 Pac. 71, held that the trial court had erred in instructing the jury that they should consider a presumption in connection with proving facts, saying:

''That is, whenever the facts or circumstances are shown concerning which the presumption is indulged, the presumption ceases, and the controversy is to be decided by the weight of the evidence adduced. That is not what the court charged. As charged, the jury were permitted to cast the presumption on the scales and to consider and weigh it with the proven facts and circumstances. There is a presumption of sanity, but when evidence respecting the sanity or insanity of the person whose mental condition is the subject of inquiry is adduced, the presumption, except as it bears on the burden of proof, is spent and the controversy is to be decided on the weight of the evidence adduced. There, as here, the presumption calls for evidence; but when it is adduced the controversy must be decided on the evidence, not on the presumption. Here the court, regardless of what facts were proven as to the deceased's conduct, in effect charged that the presumption itself was evidence to be considered in connection with the proven facts. That was wrong.''

In the case of *Richardson v. Williams*, 249 Mich. 350, 228 N. W. 766, the supreme court of Michigan said:

''This but emphasizes the prejudicial effect of the instruction in this particular case. The common instinct of self-preservation is the basis for the presumption that a person killed under unknown circumstances

was in the exercise of ordinary care. The presumption, however, is indulged only in the absence of direct and credible evidence on the subject. When plaintiff called eyewitnesses to the accident, she vouched for their credibility, and, their testimony being direct on the subject, excluded any and all resort to the presumption. The presumption never survives disclosed facts. When the presumption is permissible, its function is only provisional; it serves, if at all, alone and never in company with evidence, and therefore, cannot be weighed in the scale with or against evidence. The presumption is not evidence at all, but only a rule relative to procedure. . . .

"In the case at bar the presumption did not enter the issue at all, for the facts and circumstances of the killing were witnessed, and some of the eyewitnesses were called by the plaintiff."

See, also, *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 173 Atl. 644, 95 A. L. R. 869.

The cases cited by the majority in support of its holding that the instruction above referred to was not erroneous, in my opinion, do not support the ruling that the instruction now under consideration was correct.

In the case of *McGhee v. White*, 66 Fed. 502, the court, as I read the opinion, merely held that the question of contributory negligence was a fact to be determined by the jury from the evidence. It does not appear that the jury was ever instructed as to any presumption of law, and when Judge Taft used the language quoted by the majority, it seems to me clear that he was referring to rules governing evidence and the burden of proof (not a presumption of law), upon which the jury was entitled to be instructed. The jury, of course, may take into consideration the recognized fact that a reasonable person in possession of his faculties will not voluntarily place himself in a position of great danger. That is what might be called a natural

presumption, which the jury will, of course, consider in deciding the case upon the evidence. It presents a very different question from that now under consideration. In the case cited, the court was simply holding that the evidence on the question of negligence and contributory negligence made a case for the jury. It not appearing that the court did instruct the jury as to the effect of any legal presumption, deprives the case of any particular value as an authority here.

In the case of *Northern Pacific R. Co. v. Spike*, 121 Fed. 44, also cited by the majority, a case based upon a collision between a team and a train of cars, in which the driver of the team was killed, it would seem that there was no direct testimony concerning the actual facts leading up to the collision. The railroad relied upon the defense of contributory negligence and introduced photographs which, it was contended, showed various points on the road from which the headlights of an approaching train might have been seen. The court properly held that this evidence did not sustain the burden resting upon the railroad company to prove contributory negligence by a preponderance of the testimony. The jury was properly instructed concerning the presumption of due care, because there was no direct evidence in the case bearing upon this phase thereof. In discussing this question, the court used the language quoted by the majority, citing as authority for the proposition,

"Nor is this presumption applied only when no one witnesses the accident. It has its application in all cases and may be strong enough to overcome the testimony of an eyewitness,"

only the case of *McGhee v. White, supra,* which does not at all support the language just quoted. Because in the *Spike* case there was no direct testimony upon

the question of the acts of the deceased, the jury was properly instructed as to the presumption of due care, and the language of the court above quoted is clearly dictum.

The majority also rely upon certain decisions of this court; first, the case of *Steele v. Northern Pacific Ry. Co.*, 21 Wash. 287, 57 Pac. 820, quoting from an instruction given by the trial court, and also the language of this court referring thereto and holding that the instruction was not erroneous. It does not appear that the question of the operative effect of the presumption referred to by the trial court in instructing the jury, as opposed to direct disinterested evidence, was considered. The plaintiff was alive and testified as a witness on his own behalf. The defendant railway company contended that the plaintiff's own testimony showed that he had been guilty of contributory negligence, as matter of law.

It seems to me clear that the language used by this court means no more than a holding to the effect that, from the evidence introduced by plaintiff in the case cited, the trial court properly ruled that it should not be held, as matter of law, that the plaintiff was guilty of contributory negligence. It may be that the trial court, to some extent, confused the word "presumption" and the phrase "burden of proof," and that this confusion was not clarified by this court in affirming a judgment which was clearly correct. It cannot be contended that the rule of law which makes contributory negligence a defense and requires the defense to be proven by preponderance of the testimony, also brings into effect a presumption that a living plaintiff, testifying at length concerning his version of an accident, used due care, and requires the defendant to overcome both plaintiff's evidence and a presumption!

The case of *Smith v. Seattle,* 178 Wash 477, 35 P. (2d) 27, does not, in my opinion, support the conclusion of the majority in holding that the jury should be instructed, in the face of disinterested testimony to the contrary, that the deceased had, in fact, used due care.

In the case at bar, the majority, in criticising Mr. Hoare's testimony, infringe upon the authority of the trier of the facts, and seem to justify what seems to me an incorrect proposition of law, which will be of general application, by saying that, in this particular case, the transcript of Mr. Hoare's testimony does not appear to them convincing. This testimony was for the jury to weigh. The jury might well have disbelieved it, but they should have been instructed to consider the testimony without being required to weigh against the same any legal presumption to the effect that Mrs. Karp had done something which the witness testified positively she did not do.

Under the opinion of the majority, trial courts in all similar cases will naturally give such an instruction as is here approved, no matter how much disinterested testimony is introduced to the effect that the person killed did not use due care. The fact that, in this particular case, this court is not convinced that a witness was telling the truth, is immaterial, as a rule of law of general application is laid down. The jury, then, in each case must weigh this instruction against the direct testimony of disinterested witnesses, and may, as a matter of fact, determine that the presumption outweighs any amount of such evidence. The defendant, then, is not only required to prove contributory negligence by preponderance of the evidence, but is required, in addition, to disprove a presumption of law.

In my opinion, because of error in instructing the jury as above set forth, the judgment appealed from should be reversed and a new trial granted.

TOLMAN, STEINERT, and GERAGHTY, JJ., concur with BEALS, J.