## HANLEY et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 2, 1904.)

### No. 38.

1. **USE OF MAILS TO DEFRAUD—CONSOLIDATION OF INDICTMENTS—SENTENCE.**

   Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], prohibiting the use of mails to defraud, provides that an indictment for its violation may severally charge offenses to the number of three when committed within the same six calendar months, but the court thereupon shall give a single sentence. *Held*, that where three indictments, each charging a single offense under section 5480, were consolidated as authorized by section 1024 [U. S. Comp. St. 1901, p. 720], and defendant was convicted of the three offenses committed within the same six calendar months, the court was entitled to sentence the defendant, in its discretion, to the full extent of the penalty provided for each offense.

2. **SAME—MAILING LETTERS—EVIDENCE.**

   In a prosecution for using the mails with intent to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], evidence reviewed, and *held* sufficient to establish that defendants placed or caused the letters set forth in the indictment to be placed in the railway post office alleged in the indictment.

On Rehearing.

For former opinions, see 123 Fed. 849, 126 Fed. 944.

This cause has been reargued. The original opinion, which modified the judgment of the district court by remitting all penalties in excess of the sentence imposed under the first indictment, was filed July 1, 1903 (C. C. A.; 123 Fed. 849). It may be referred to for a statement of the case. Subsequently the district attorney called attention to In re De Bara, 179 U. S. 316, 21 Sup. Ct. 110, 45 L. Ed. 207, which had been overlooked in argument, and after examining the citation a reargument was ordered as to the application of said decision to the case at bar. In the original opinion we said: "Plaintiffs in error argue that a fatal defect in the record is the total absence of any proof that the defendants placed or caused to be placed in the so-called railway post office the letters set forth in the indictment. It is a sufficient answer to this proposition that there is no certificate of the trial judge that the bill of exceptions sets forth all the evidence, or that it contains a statement of all the proceedings upon the trial." After reargument was ordered defendant obtained such certificate from the trial judge, and he has now been heard upon the question whether there was sufficient proof of mailing or of causing to be mailed. The reargument has been confined to the two points specified.

Jael M. Marx, for plaintiffs in error.
Chas. H. Brown, for the United States.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). Referring to the section of the Revised Statutes under which sentence in this case

¶ 1. See Post Office, vol. 40, Cent. Dig. § 90.
    127 F.—59

was imposed, the Supreme Court in the De Bara Case, 179 U. S. 322, 21 Sup. Ct. 113, 45 L. Ed. 207, says: "To it [the trial court] is confided the power to adapt the punishment to the degree of crime. It may sentence the full penalty upon one offense. It may, though it is not required to, do more upon three offenses, and in a single sentence of one day, or of eighteen months, or three times eighteen months, it may express its views of the criminality of the defendant," etc. In view of so plain a statement, it is idle to discuss whether or not some different conclusion might be a fair and logical deduction from the language of the statute as construed in other reported cases. The decision in the De Bara Case is in point and controlling, and must be followed here.

On the other matter reargued defendants apparently rely on the recent decision of this court in Harvey v. U. S. (C. C. A., filed Nov. 18, 1903) 126 Fed. 357. In that case, however, no one testified that the package had ever been in the mail. The person to whom it was addressed testified only that he "received it." He did not state that he received it from the mail, or from the postman or letter carrier. Moreover, he testified that he received it two days before the date stamped upon the letter as part of what the government contended was a postmark. These circumstances, namely, its receipt by the witness apparently otherwise than through the mail, and the difference in date above stated, would seem to indicate that the black marks, letters, and figures, some of them illegible, on the envelope, which looked like a postmark, had not been in fact stamped on it by post office employés. Therefore we commented on the circumstance that "no one was called to give any explanation of the meaning of these various marks; no one to testify that any of them were made by the canceling stamps of a post office." A very different case would have been presented had the fact of the letter having once been in the mail been established by the testimony either of the person who deposited it therein or of the one who received it therefrom bearing the ordinary postmark, with which every one is familiar, legibly impressed, and containing no letters or figures indicating abbreviations which required explanation. Such abbreviations as "Jan. 1, 03," or "N. Y.," or "Penn.," would surely require no explanation. The Harvey decision has no application to the facts in the cause at bar.

The defendant Hanley and his confederates were indicted under Rev. St. U. S. § 5480 [U. S. Comp. St. 1901, p. 3696], for wrongfully placing letters in the mail in order to carry out a scheme to defraud by pretending to deal in what is commonly called "green goods," whereby the intended victim is deluded into a belief that he is buying counterfeit United States treasury notes, when in fact there is delivered to him only a package of green tinted paper, with a genuine bill on the top and one on the bottom of the pile. Such scheme is usually carried out by sending out through the mails a so-called first circular. When the intended victim—known in the business as a "come-on"—has responded to this, a second and more explicit circular is sent to him through the mails, giving him careful instructions as to how he shall meet his correspondent. The four indictments cover the mailing of four of these so-called second circulars. Hanley and his confederates were located

in the city of Buffalo, and he met such "come-ons" as presented themselves at the Assembly Hotel in Tonawanda, which is readily accessible from Buffalo by steam railroad and by trolley.

The principal witness for the government was William A. Clark, one of the confederates, who called himself a clerk of Hanley. and turned state's evidence. On this branch of the case he testified that in the course of his employment with Hanley he addressed envelopes, copied letters—circular letters—and mailed letters; that he went to the Central Depot with Mr. Hanley, and mailed some letters on various occasions; that what are called the first letters were mailed at Bradford, Pa., and that what are known as the second class of letters were mailed at Buffalo—on the train at the New York Central Depot, on the railway postal train, in a railway postal car, at the New York Central Station, on Exchange street, in Buffalo, N. Y.; that witness made three trips to Bradford, and there mailed, with the assistance of messenger boys, 14,000 first letters; that Hanley helped in the preparation of the first letters for mailing at different times; helped fold and close them in the envelopes, helped seal and stamp them, and paid witness' expenses to Bradford; they were stamped in Buffalo; that Brown helped seal the "second letters" and stamp them; that Hanley furnished the stamps for them, and himself put the stamps on some of them; that witness went to the station in Buffalo with Hanley at different times when he went to mail "second letters," and had seen him mail them; that he put them in the postal car—handed them to the clerk on the car; that he also saw Brown (the other defendant) mail "second letters" at the New York Central Depot; that in the case of the second letters sometimes witness went, sometimes Brown went, and sometimes Hanley went down to the railroad trains at the New York Central Station to mail them; that witness had in some instances accompanied one or other of them, but, of course, when he was not with them he does not know what they did; that whenever he took second letters down he handed them to one of the clerks aboard the car on the train that left about 11:30 at night.

The "come-on" named in indictment No. 157 is Ivah D. Williams, of West Farmington, Ohio; the one named in indictment 158 is Clarence N. Cook, of Mungen, Ohio; the one named in indictment No. 159 is James Bolling, of Lowndesborough, Ala.; and the one named in indictment No. 160 is Hoel H. Gibbs, of Ute, Iowa. Further testifying, the witness Clark said that he remembered these names as persons to whom first and second letters were sent, and that Williams and Cook were from Ohio, Bolling from Alabama, and Gibbs from Iowa. On direct examination he testified:

"I remember there were letters mailed to them from Exchange street, in Buffalo, on a railway postal car. I cannot recall the dates of mailing, but it was between the time when I went into the employ of Hanley and the time when I ceased to work for him; that is, between the summer of 1900 and the spring of 1901."

On cross-examination he testified:

"I heard from Hanley that a reply [to first letter] had been received from Ivah D. Williams. * * * I did actually send to Mr. Williams the second

letter, and it was similar to those attached to the indictment. I knew a letter was prepared for Clarence N. Cook, which I prepared, and which I put in the envelope and addressed to him in Ohio. I may have mailed it myself. I prepared a second letter one time addressed to Hoel H. Gibbs. I wrote that on the typewriting machine, and put that in the envelope, and addressed it to him at his place of residence, and put a two cent stamp on it. I don't recollect whether I mailed or not."

It will be perceived, as was to be expected, that when it comes to testifying to the mailing an individual letter out of the thousands that passed through Clark's hands his evidence lacks specificness, and, being an accomplice, his evidence needs corroboration.

William S. Ryan, of Batavia, N. Y., who had been a post office inspector for nine years, and was familiar with the way of stamping letters on board a mail train, testified that letters mailed upon a train at the New York Central Station in Buffalo are "postmarked New York and Chicago, R. P. O., M. D., with the train number and date. It would be abbreviated, 'N. Y. & Chi., R. P. O., M. D.,' then the 'tr' and the date." Evidently "R. P. O." means "Railway Post Office." Defendant's counsel suggests in his brief that "M. D." means "Middle Division," but we find no testimony to that effect; the suggestion is a plausible one.

Ivah D. Williams, referred to in the first indictment, testified that he resided at West Farmington, Ohio; that in the fall of 1900 he received, through the mail, a letter which had been posted at Bradford, Pa. It contained a printed circular. Witness telegraphed, according to directions in the letter, to M. B. Scott at Carrier, Pa., and again heard by letter in regard to the matter. He received this second letter during the forepart of October, 1900. It was postmarked. He was unable to produce the letter, because he gave it to the man he met subsequently at Tonawanda—the defendant Hanley. He testified to his best recollection of what was on the postmark, and gave it as "N. Y. & Chi. M. D."

Clarence N. Cook, who was referred to in indictment No. 158, testified that he lived at Mungen, Ohio, and that in the latter part of September, 1900, he received a circular in regard to green goods through the mail, and identifies the form testified to by Clark; that it was postmarked at Bradford, Pa.; that he telegraphed to M. B. Scott, Carrier, Pa., and in response received a second letter, similar to the one set out in indictment, some time in October. Witness had destroyed all the papers he had relating to the matter, but, testifying from his recollection as to the second letter, he said:

"That came in an envelope. I thought it was postmarked on the railroad—mailed on a mail car, the way I understood it. There was a part of it blotted out. The mark on it was 'N. Y. & Chi.,' and the balance of it, except 'W. D.,' was blotted out, so that I couldn't make it out plain."

No sentence was imposed under indictment No. 159, so we need not consider the evidence given by James Bolling.

Hoel H. Gibbs, who is referred to in indictment No. 160, testified that he lived at Ute, Iowa; that he received the first circular, postmarked Bradford, Pa.; that he telegraphed to Carrier, Pa., and in response received through the mail a second circular, similar to the

others already in evidence, which he burned. Testifying from memory to the marks on it, he said:

"It was postmarked—I wouldn't say for certain, but I think—'Chi.' I be-. lieve it is 'M. D.' I wouldn't swear as to that part of it. That is my recollection."

Upon all this evidence it is of course possible that Brown or Hanley carried the second letter for Gibbs to Chicago and mailed it there; but it seems to us that an intelligent mind might fairly be satisfied beyond any reasonable doubt that the three "second letters" were all mailed as charged in the indictment—"in a post office of the United States at Buffalo, to wit, in a railroad car, at the New York Central & Hudson River Railroad Station, on Exchange street, in Buffalo aforesaid, which railroad car was then and there being used as and was a railway post office of the United States."

In view of the De Bara Case, we reconsider our former decision, and concur to affirm the judgment of the District Court.