## THE VIGILANT. *

### FOSS CO. et al. v. VIGILANT TOWING CO.

Circuit Court of Appeals, Ninth Circuit.
November 12, 1929.

No. 5765.

Lawrence Bogle, Cassius E. Gates, and Claude E. Wakefield, all of Seattle, Wash., for appellants.

Grover E. Desmond, John E. Ryan, and John E. Ryan, Jr., all of Seattle, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and LOUDERBACK, District Judge.

LOUDERBACK, District Judge. Appeal from the District Court of the United States for the Western District of Washington.

Libel in admiralty, wherein the libel and intervening libel of appellants, brought to recover damages from the appellees for the loss of the scow Aberdeen, owned by the Foss Company, and damage to the D. L. 43 scow owned by the Drummond Lighterage Company, was dismissed.

The scow Aberdeen, owned by the Foss Company, was chartered under a time charter to the Independent Gravel Company of Seattle, Wash., without motive power, and with no crew aboard. The scow D. L. No. 43, owned by the Drummond Lighterage Company, was also under time charter of the bare scow to the same company and had been so chartered for some time. Neither of the appellants knew of the use or manner in which these scows were being used. The Independent Gravel Company was a party to this ac-

*Rehearing denied December 17, 1929.

tion, but, due to insolvency and dissolution prior to the trial of this cause, did not appear, and no rights or liabilities were adjudicated as to the said gravel company.

On the 15th of March, 1927, the tug Vigilant, owned by the claimants and at the request of the Independent Gravel Company, took in tow two empty scows, the Aberdeen and the D. L. No. 43, both bound from Seattle, Wash., to the Producers' Sand & Gravel Company pit at Royal Roads, Vancouver Island, B. C., in the vicinity of Victoria, B. C., for the purpose of having both scows loaded there with gravel and returned to the Independent Gravel Company at Seattle.

The tug Vigilant is an American vessel 64.5 feet in length, 19.2 feet in breadth, 8.5 feet in depth, and of 70 gross and 48 net tons. The scow Aberdeen, registered under the laws of the United States, is 109 feet in length, 37.5 feet in breadth, 9 feet in depth, and has a gross and net tonnage of 286 tons. The scow D. L. No. 43, registered under the laws of the United States, is 90 feet in length, 33.9 feet in breadth, and 9.3 feet in depth, having a gross and net tonnage of 284 tons.

The tug Vigilant, with its tow aforesaid, left Seattle about 3:00 o'clock p. m., March 15, 1927, with a crew of five composed of the master, C. C. Croft, a mate, Fred Hardwick, an engineer, a deck hand and a woman cook, Mrs. Hardwick. The tug Vigilant has a diesel engine, and does not have a pilot house control, but requires an engineer in the engine room to operate the engines.

The tug with its tow arrived at the Producers' pit between 2:30 and 3:00 o'clock of the morning of March 16, 1927. The scow D. L. No. 43 was tied to a buoy 350 feet in front of the loading wharf at the Producers' pit, and the Aberdeen was taken in to the loading wharf, placed under the loading chute and made fast at 4:00 a. m. on the 16th of March, 1927. The master then got off the tug and proceeded to Victoria by automobile to enter his tug in accordance with Canadian customs regulations. The tug was left in charge of the mate, who took the tug out and moored it to and astern of the D. L. No. 43. Due to the weather, and between 4:00 a. m. and 6:30 a. m. of March 16, 1927, the Aberdeen was destroyed by pounding to pieces against the loading wharf and on the beach, and the D. L. No. 43 broke loose from its moorings and went on the beach and was damaged.

The issue presented by the libels was whether or not the master of the tug Vigilant, owned and operated by the appellee, exercised reasonable care and caution toward his tows. The evidence on the part of the libelant tends

to show: That the Producers' pit is situated at the end of Vancouver Island and is in an extremely exposed position and unprotected from the south, southeast, and east, with an expanse of 40 miles of open water at its front. That, from September to March, rough weather was to be looked for, since a southeast wind is general during this period. That such wind is the most dangerous wind, and sometimes a storm comes up in a matter of a few minutes' time. That a tug must be ready, at short notice, to move out from this vicinity in case of a southeast wind. That there was a falling barometer for some time prior to the disaster, and that, during the month of March in this locality, means an increasing southeastern wind—a storm. That on the morning of the accident there was recorded at a weather bureau 7 miles distant from the pit, a southeast wind with the following velocities: 2 a. m.—11 miles, 3 a. m. —10 miles, 4 a. m.—9 miles, 5 a. m.—20 miles, and 6 a. m.—35 miles. That the crew was too small to handle the conditions in the event of storm, and that the master should not have left his tug as he did. That the master was warned by the superintendent at the pit not to moor his tows as he did. That it was hazardous to take two tows into this vicinity. That the mooring of the tug to the scow D. L. 43 prevented it from active assistance in the event of sudden storm.

The evidence on the part of the libelee tends to show: That the only danger at the pit was from a southeast wind, for a bluff protected it from a westerly and southwesterly wind, and the north wind was not dangerous. That a southwest wind was the prevailing wind in this locality in March. That a southeast wind was most infrequent. That the master took precaution to learn if any storm was to be expected by calling the Seattle weather bureau, and he observed no weather or storm warnings at Port Townsend or Victoria. That, from where the tug was located, at 3:30 a. m. a light northerly wind was blowing and nothing to indicate a storm. That on arrival at the pit there was no wind and the weather was very fair. That the superintendent of the pit, an agent of the gravel company, had on a prior occasion instructed the master how to fasten the barges and tug at the pit and it was so done. That in the instant case the superintendent of the pit approved the position of the Aberdeen, moored to the wharf. That the mooring of the tug to the D. L. No. 43 was not improper under the circumstances, since a storm was not to be expected. That the steadily falling barometer, to the extent to which it did fall, was no indication of a storm. That after the storm did begin the presence of the master would not have altered conditions. That everything possible was done by the tug to save the tows, under the weather conditions.

A careful reading of the evidence in this case shows that the testimony is conflicting as to the material facts. Practically all the evidence was given by witnesses who testified in person before the trial court. The trial judge therefore had the opportunity of seeing the witnesses and judging their appearance and manner while upon the stand and under examination.

"The rule is well settled that in cases on appeal in admiralty, when the questions of fact are dependent upon conflicting evidence, the decision of the district judge, who had the opportunity of seeing the witnesses and judging their appearance, manner, and credibility, will not be reversed unless it clearly appears that the decision is against the evidence." The Alijandro, 56 F. 621, 624, 6 C. C. A. 54; The City of Naples, 69 F. 794, 796, 16 C. C. A. 421; The Columbia, 73 F. 226, 19 C. C. A. 436; The Captain Weber, 89 F. 957, 32 C. C. A. 452; Paauhau Sugar Plantation Co. v. Palapala, 127 F. 920, 66 C. C. A. 552; Perriam v. Pacific Coast Co., 133 F. 140, 66 C. C. A. 206; Peterson v. Larsen (C. C. A.) 177 F. 617.

The decree of the District Court is affirmed.