MARY E. REED *vs.* QUEEN ANNE'S RAILROAD COMPANY.

*Personal Injuries—Husband and Wife—Action by Widow—Death of Husband—Presumption of Law—Due Care—Negligence— Duty of Company—Duty of Traveler—Unavoidable Accident—Opinion of Witness as to dangerous character of Crossing—Nonsuit refus'd—Measure of Damages.*

1. In an action by a widow against a railroad company to recover damages for the death of her husband, a witness for plaintiff having testified that he was familiar with the crossing in question and its surroundings, and that there were embankments, trees, etc., near said crossing which would obscure the traveler's view of an approaching train; *held* that the witness might give his judgment as to whether the crossing was an unusually dangerous one.

2. Upon a consideration of all the testimony on the part of the plaintiff, a motion for nonsuit refused, the Court saying: " Under the testimony this is a very close case, but as it stands we must decline to grant a nonsuit."

3. Public highway crossings at grade of a railroad operated by steam engines are in themselves danger-warnings, both to the company itself and to travelers on the public highway using such crossings. When railroad trains are approaching such crossings it is the duty of the company to give due and timely warning of such

approach, so that travelers may have reasonable notice thereof. It is further their duty to regulate the speed of the cars according to the danger. If the crossing be in a thickly populated or much frequented locality, or the view be obstructed, or exceptionally dangerous from any cause, it is the duty of the company to exercise greater care and caution, proportioned in every case to the danger, so as reasonably to avoid accident.

4. On the other hand, there is a like duty imposed upon the traveler upon the highway. He must exercise in every case care proportioned to the dangerous nature of the crossing. If there are no obstructions, and the approaching train can be readily seen, he must reasonably use all his senses to avoid the danger. If by stopping, looking or listening, he could see or hear the approaching train, and he does not do so and the accident happens from that cause only, he takes the risk and must bear the consequences of his own carelessness. If the view of the crossing be obstructed or is otherwise exceptionally dangerous, he must use care and caution in proportion to such increase of danger, and to any knowledge that may come to him from familiarity with the conditions.

5. What particular facts constitute negligence in any particular case, depend upon the circumstances of that case. The speed of the train, the giving of signals or warning and other precautions on the part of the railroad company ; the stopping, looking, listening and other precautions on the part of the traveler, must vary with the varying conditions and danger in each case. Where the law does not limit the speed, it is in the discretion of the company, reasonable precaution being taken therein for the security of life and property. Mere compliance with signals or warning required by the statute may not be sufficient where the surrounding conditions reasonably demand other and more effective warning.

6. In the absence of evidence to the contrary, the law presumes that at the time of the accident the deceased did his duty, and did exercise reasonable care. This, however, is mere presumption of law. Such presumption does not apply where all the circumstances of the accident are detailed by eye witnesses.

7. If the horse of the traveler becomes unmanageable from any cause, and runs across the track, and an accident happens from that cause, without fault on the part of the company, it would be in the nature of inevitable accident, for which the company would not be liable.

8. Measure of damages.

*(October 14, 1903.)*

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Robert C. White* and *James A. Marsh* for plaintiff.

*Charles W. Cullen* for defendant.

Superior Court, Sussex County, October Term, 1903.

ACTION ON THE CASE (No. 76, April Term, 1901) by widow, to recover damages for death of husband.

Plaintiff claimed that in the month of March, 1901, in the town of Milton in Sussex County, at a point where the railroad of the defendant company crosses Federal Street, the carriage in which her husband was riding was struck by one of the defendant's locomotive steam engines attached to a train of cars ; that the carriage was broken to pieces, her husband thrown to the ground and killed ; that his death was caused by the negligence of the defendant company, in then and there running their train at a high rate of speed, without giving the usual signals and warning, and without due, reasonable and timely warning at such crossing.

*William B. Carswell* testified that he was a civil engineer of twenty years' experience, including three years on construction work on the Baltimore and Ohio Railroad, and was familiar with the crossing in question and surroundings, having made a survey and plot of the same.

Witness further testified that there was an embankment two hundred and fifty feet long by about five feet elevation at its highest point, with bushes, briars and cedar trees growing upon it, on the East side of Federal Street approaching said crossing, which would, more or less, obscure a traveler's view of a train of cars approaching said crossing, until the person reached the point where the embankment terminated at the right-of-way of the defendant company, at or near the crossing.

The witness was then asked by Mr. White :

" Is or not that, in your judgment, an unusually dangerous crossing for a person coming from the direction of Milton and crossing the railroad at that point, with a train approaching from the East ? "

(Objected to by counsel for defendant on the ground that the question as to whether or not the crossing was an unusually dan-

gerous one was a matter to be determined by the jury and not by the witness.)

LORE, C. J.:—We think the witness may answer the question.

"A. Considering the physical conformation of the land, I think it is."

The evidence further showed that the train which struck the deceased, consisted of a locomotive engine and two passenger coaches; that said train was a west bound through extra; that about the time that Mr. Reed, driving a horse to a top buggy, passed behind the embankment, some two hundred and fifty feet from the crossing, and approaching the crossing, the engine blew its whistle in a woods some two thousand feet east of the crossing, and immediately came out from said woods, running at the rate of from thirty to forty-five miles an hour, and did not blow the whistle again until just before or about the time of the collision with defendant's carriage, when two or three sharp "toots" were sounded.

*Thomas Van*, a colored man, testified on behalf of the plaintiff, that he lived on Federal Street about opposite the point where the hill began to rise and about two hundred feet from said crossing; that on the day of the accident, he was at home, and, on looking out of his front window, saw John W. Reed driving a horse to a carriage slowly down Federal Street coming from the direction of Milton toward the Federal Street crossing; that the horse was "just about jogging along;" that he next saw Reed and his team while jogging along about thirty yards from the crossing; that having heard the train blow and at that time having gone out of his house, he was standing looking at Mr. Reed to see whether the man intended to get across or not before the train got there; that the man and team were in his sight from that time until the accident happened; that the horse then seemed to be in a "dead level run;" that he did not see the horse make any stop at all, he kept right on running and "jumped the track the very same way"; that he did

REED vs. QUEEN ANNE'S R. R.        417

MOTION FOR NONSUIT—OPINION.

not see Reed look to either side or listen. " His head was down ; did not seem to be taking any notice of anything at all—sitting there. Just about the time the hind wheels got midway of the track the engine struck him. The next I saw was that the train had run up to some pines and stopped, and I looked on the other side and saw the horse getting up out of a bed of sand. He was not injured a great sight. I went down soon afterward and saw pieces of the carriage lying scattered along the railroad track. The carriage was torn all to pieces. I saw John W. Reed, he was laying head toward the East on the Eastern side of the track, I suppose somewhere about fifty or sixty yards from the crossing."

### Motion for Nonsuit.

When the plaintiff rested, counsel for defendant moved for a nonsuit upon two grounds, viz.:

*First*—Because, under the proof, the death of John W. Reed was the result of a pure accident either inevitable or unavoidable.

*Second*—Because, under the proof, there was contributory negligence on the part of the deceased.

LORE, C. J. :—Under the testimony this is a very close case, but as it stands we must decline to grant a nonsuit and will let you go to the jury.

LORE, C. J., charging the jury :

Gentlemen of the jury :—This action is brought by Mary E. Reed, the plaintiff, against Queen Anne's Railroad Company, the defendant, to recover damages for the death of her husband John W. Reed.

She claims that in the month of March, 1901, in the town of Milton in this county, at a point where the railroad of the defendant company crosses Federal Street, that the carriage in which her husband was riding was struck by a locomotive steam engine

28

attached to a train of cars ; that the carriage was broken to pieces, her husband thrown to the ground and killed ; that his death was caused by the negligence of the defendant company, in then and there running their train at a high rate of speed, without giving the usual signals and warning at such crossing. ˙ That by reason of such death she as his widow has sustained damages which she seeks to recover in this suit.

While there are no new or disputed questions of law raised in the case, yet, at the request of the counsel for both parties, it is our duty to instruct you as to certain rules of law which are to govern you in reaching your verdict.

This action is founded upon the negligence of the defendant company. If therefore the company was guilty of no negligence at the time of the accident, there can be no recovery. The mere fact that Jonn W. Reed was killed at that crossing by the train of the defendant, does not warrant a verdict for the plaintiff. There must be, in addition to the proof of killing, further proof that such death resulted from the negligence of the defendant company. Such negligence is never presumed, but must be satisfactorily proved by the preponderance of the evidence in the case. If not so proved, your verdict should be for the defendant.

Public highway crossings at grade of a railroad operated by steam engines are in themselves danger warnings, both to the company itself and to travelers on the public highways using such crossings.

When railroad trains are approaching such crossings it is the duty of the company to give due and timely warning of such approach, so that travelers upon the highway may have reasonable notice thereof. It is further their duty to regulate the speed of the cars according to the danger. If the crossing be in a thickly pop-ulated or much frequented locality, or if the view of the crossing be obstructed, or exceptionally dangerous from any cause, it is the duty ˙of the company to exercise greater care and caution, propor-

tioned in every case to the danger, so as reasonably to avoid accident.

On the other hand, there is a like duty imposed upon the traveler upon the highway. He must exercise in every case care proportioned to the dangerous nature of the crossing. If there are no obstructions, and the approaching train can be readily seen, he must reasonably use all his senses to avoid the danger. If by stopping, looking or listening he could see or hear the approaching train, and he does not do so and the accident happens from that cause only, he takes the risk and must bear the consequences of his own carelessness. If the view of the crossing be obstructed or is otherwise exceptionally dangerous, he must use care and caution in proportion to such increase of danger, and to any knowledge that may come to him from familiarity with the locality or the surrounding conditions.

What particular facts constitute negligence in any particular case the court will not attempt to prescribe. What particular acts or things should be done or omitted so as to constitute due and reasonable care and caution on the part of the railroad on the one hand, or on the part of the traveler upon the highway on the other, depends upon the circumstances of each case. The speed of the train ; the giving of signals or warning and other precautions on the part of the railroad company ; the stopping, looking, listening and other precautions on the part of the traveler, must vary with the varying conditions and danger in each case. Where the law does not limit the speed of railroad trains, such speed is in the discretion of the company, reasonable precaution being taken therein for the security of life and property. Mere compliance with signals or warning required by the statute may not be sufficient where the surrounding conditions reasonably demand other and more effective warning. In every case the rule is that each party should do what reasonably careful and prudent persons would do under like circumstances.

In the absence of any evidence to the contrary the law pre-

sumes that at the time of the accident John W. Reed, the deceased, did his duty and did exercise reasonable care and caution. This, however, is mere presumption of law. Such presumption does not apply where all the circumstances of the accident are detailed by eye witnesses who saw the same. In such case you should be governed by that evidence.

If John W. Reed knew, or by the reasonable exercise of his senses could have known of the approaching train that day in time to have prevented the accident, and saw fit to take the risk of crossing in front of the train, and the accident happened from that cause alone, he would be guilty of contributory negligence and the plaintiff cannot recover.

In other words, if you believe that the accident would not have happened had John W. Reed stopped, looked and listened before driving on the railroad track, and that he did not stop, look and listen, your verdict should be in favor of the railroad company.

If his horse became unmanageable from any cause and ran away across the track, and the accident happened from that cause, without fault on the part of the railroad company, it would be in the nature of an inevitable accident, for which the defendant company would not be liable.

If at the time of the accident John W. Reed contributed proximately in any way thereto, the plaintiff cannot recover. The law will not attempt to measure the degree of such contributory negligence.

If, however, the accident happened from the negligence of the defendant company only, then your verdict should be for the plaintiff.

If you find for the plaintiff, it should be for such a sum of money as will reasonably compensate her for any and all damages that she has sustained, or may hereafter sustain by reason of the death of her said husband, basing your verdict upon the number of years the deceased would probably have lived had he not been so killed.

VERDICT.

In measuring damages in this case, you are not to be governed by what would probably have been the gross earnings or income of the deceased, but by what portion of the gross earnings or income the plaintiff would probably have received from the deceased as his wife, if he had lived.

Verdict for plaintiff for $5000.