EDWARD W. EVANS, Widower of Florence E. Evans, deceased, plaintiff below, plaintiff in error, *vs.* PHILADELPHIA, BALTIMORE and WASHINGTON RAILROAD COMPANY, defendant below, defendant in error.

1. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—NONSUIT.

In an action for death at a railroad crossing, a nonsuit will be granted if plaintiff fails to prove the negligence of defendant, or if plaintiff's testimony shows that the person killed was guilty of negligence which proximately contributed to his death.

2. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS.

Where a person is killed at a railroad crossing, it will be presumed that in approaching the crossing he exercised the care of an ordinarily prudent person, if the evidence is silent as to his conduct at the time of the injury, but such presumption will not obtain in the face of unmistakable evidence of contributory negligence.

3. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.

Decedent was killed at a railroad crossing, where the track was straight in the direction from which the train approached for between 800 and 1035 feet. Assuming that when she looked in that direction and continued to walk over the crossing she was traveling two or two and one-half miles an hour and the train was moving seventy miles an hour, it must have been visible to her. She was in good health, in possession of all her faculties, and was familiar with the crossing, but continued to walk over the same in front of the approaching train, and was struck. *Held*, that she was negligent as a matter of law.

(*June* 21, 1911.)

CURTIS, Chancellor, and Associate Judges CONRAD and WOOLLEY sitting.

*Richard R. Kenney* and *Alexander M. Daly* for plaintiff in error.

*George M. Jones, John Biggs* and *Armon D. Chaytor, Jr.*, for defendant in error.

Supreme Court, June Term, 1911.

WRIT OF ERROR (No. 1, January Term, 1911) to Superior Court for Kent County. Action by Edward W. Evans against Philadelphia, Baltimore and Washington Railroad Company (No. 13, October Term, 1909), for the recovery of damages for the death of plaintiff's wife. Judgment for the defendant (1 *Boyce* 562, 77 *Atl.* 831) and plaintiff brings error. Affirmed; CURTIS Ch., dissenting. The facts and questions presented appear in the opinion of the court.

CONRAD, J., with whom concurred WOOLLEY, J., delivering the opinion of the court:

On May 27, 1909, about 3:20 p. m., a bright, sunshiny day, Florence E. Evans, the wife of plaintiff, aged fifty-eight, in good general health, was killed by the north-bound Norfolk Express, a railroad train fifty minutes behind its schedule time, operated by defendant company on the Delaware Railroad, as it passed northward across Broad Street, a public highway in the town of Wyoming, Kent County, at a speed estimated at from forty to seventy miles per hour. The Delaware Railroad at the place where the accident occurred is a double track railroad running north and south.

The engine whistle was blown about six hundred yards from Broad Street, while the train was on a curve south of Hale's Crossing, which crossing is one thousand four hundred and fifty-nine feet from the highway crossing, where Mrs. Evans was killed. The whistle was not blown again nor any bell rung or any warning whatever given until Mrs. Evans was struck at the crossing.

The speed of the train was so great just before the accident that it attracted the attention of people along the line. An engine and freight train of thirteen or fourteen cars was standing on the southbound track heading north, the engine being just south of the switch box five hundred and seventy feet south of the Broad Street crossing.

In addition to the switch box there was a block signal station south of the Broad Street crossing, both on the west side of the tracks. Neither the block signal station nor the switch box obstructed the view southward when one stood within six or seven feet of the westerly rail of the southbound track.

Mrs. Evans was walking at her ordinary gait along Broad Street eastwardly toward the railroad crossing. At three feet from the westerly rail of the southbound track she was observed to turn her head and look to the south, and then she looked towards the north as she walked across. She did not "slacken her gait at all as she walked along." She was walking at her usual gait. "She was a pretty fast walker anyhow." As she was going across

the southbound track "just before she was struck, she was looking toward the north." She did not change her gait from the time she was first seen until she was struck by the engine and killed.

The facts stated having been proved when the plaintiff rested, defendant moved for a nonsuit, which the court below granted, and the plaintiff declined to accept; whereupon the court directed a verdict for defendant.

The errors relied upon by the plaintiff in error are (as numbered in the assignments of error set out in the record):

"2. That the court erred in directing the jury to render a verdict for the defendant.

"3. That the court erred in charging the jury as follows: 'We direct you to return a verdict for the defendant, for the reason which we have just stated in granting the nonsuit'."

[1] The general principle has been long established that in an action where damages are claimed by reason of the negligence of the defendant that negligence must be proven by the plaintiff, and the plaintiff failing to prove negligence a nonsuit will be granted.

Another principle of law equally well established is, that if the plaintiff's testimony shows that the deceased was guilty of negligence at the time of the accident, and that such negligence proximately contributed to the death of the deceased, the case will not be permitted to go to the jury, and a nonsuit will be granted, even though the defendant was guilty of negligence.

The law books and reports are full of decisions on the points involved, but nowhere have questions of contributory negligence and the right of courts to grant nonsuits, received more serious and deliberate consideration than by the courts of our own state; so in the case before us the court has no new law to announce, its duty being merely the fitting of well-established law to the facts as shown by the testimony adduced by the plaintiff. The established law in this state, determining when a court may find contributory negligence as a matter of law, appears in the opinion of this court, in the case of *Queen Anne's R. R. Co.* v. *Reed*, 5 *Penn.* 226, 59 *Atl.* 860, 119 *Am. St. Rep.* 301, as follows:

"It is quite impossible to lay down any definite rule by which

Opinion.

to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact. The determination of the question must necessarily be controlled by the facts and circumstances of the particular case. And the court will not decide it as one of law, although the weight of the evidence may seem to be on one side or the other, if the testimony be conflicting, or if the conclusion to be drawn therefrom is doubtful and uncertain. * * * If, however, it clearly appears from the evidence that there was contributory negligence, proximately entering into and contributing to the accident, at the time of its occurrence, it is the duty of the court to so find, as a matter of law."

In the case at bar negligence of the defendant will be assumed, as suggested in the charge of the court below, but the real question before the court on review is, was the deceased guilty of such negligence as proximately contributed to the accident, and was such negligence so clear and unmistakable as to justify the court below in granting a nonsuit, or did Florence E. Evans, the deceased, come to her death by reason of her own negligence and would the exercise of that reasonable care and prudence, which the law requires of all persons, have prevented the accident?

[2] In reaching a determination whether the trial court erred in finding as a matter of law that the plaintiff's wife was guilty of contributory negligence and failed to exercise that degree of care which the law required of her, this court is guided by an established and well-known rule of law. It is that when a person is killed at a railroad crossing, and being dead is unable to speak and show the degree of care he exercised, he is clothed by law with the presumption that in approaching the crossing he did his duty, and used the care and caution which an ordinarily prudent and careful person would use under like circumstances. (*Martin v. B. & P. R. R. Co.*, 2 *Marv.* 123, 130, 42 *Atl.* 442.) By this presumption the court as well as a jury is governed, and when the testimony is silent as to the conduct of the deceased at the time of the injury and the circumstances suggest nothing as to his failure to exercise the caution which the law requires of him, the court is bound by this presumption, and upon proof of negligence on the

part of the defendant, will submit the case to the jury. But this presumption is rebuttable, and when it is shown as in this case, either by direct testimony or rebutting circumstances (*Queen Anne's R. R. Co. v. Reed, supra*), that the deceased at the time of the injury did not exercise the care and caution required of her and that she proximately contributed to the injury that resulted in her death, she is thereby stripped of the presumption with which the law at first clothed her, and leaves her case to be determined. either by the court on a motion for nonsuit, or by the jury if submitted to them, by the same unaided rules of law that apply in any other case where the injured person survives.

[3] In considering the evidence of the conduct and situation of the plaintiff's wife, the trial court, in its decision upon the motion for a nonsuit, made the following summary·

" (1) That the railroad tracks, at the place of the accident, and for about a quarter of a mile southward, were straight.

" (2) That there was at the time of the accident no obstruction, or anything in the way, of such a character as to prevent the deceased seeing the approaching train in time to avoid the danger, and there was nothing that occurred at or about the time of the accident in any of the surrounding circumstances to prevent her from seeing or hearing the approaching train if she had looked and listened as it was her duty to do before attempting to cross the tracks.

" (3) That the deceased at the time of the accident was in good health and in the possession of her faculties of sight and hearing; she was familiar with the crossing where the accident happened and the conditions surrounding the same. Having lived very near the crossing for more than twenty years, she was bound to know that the crossing was a place of danger.

" (4) That the deceased was walking on foot as she approached the crossing, and had therefore full control of her movements, yet she walked fast and continued to do so without stopping until she was struck by the engine.

" (5) That the whistle of the train was blown at Hale's Crossing, which several of the plaintiff's witnesses, who were at the time very near the place of the accident, distinctly heard, and

it was, in fact, the whistle and the rumble or noise made by the movement of the train which first attracted their attention."

In addition to this summary we wish to say that from the evidence it appears that the deceased was afoot and approached the railroad tracks at a right angle, thereby being in complete control of her own movements and having an equal opportunity to look in both directions for the dangers which the crossing itself must have suggested to her. While several persons observed her, at intervals, from the time she left the side of a street opposite to and parallel with the tracks, until she was upon the tracks and killed, singularly enough, there was one witness who testified that he watched her the whole time as she approached the track, from where she left a place of safety, until she came into the place of danger. He testified that when she was within about a yard of the westerly rail of the southbound track she looked south (whence the train was coming)and then turning her head, and looking north, proceeded across the tracks. No presumption can stand against this testimony  The plaintiff, by the testimony of this witness, has fixed her place and defined her act. Having looked at a certain place, what does the testimony then disclose?

Upon the southbound track, five hundred and seventy feet away, a freight train was standing, heading north. When six or seven feet away from the westerly rail of that track, the deceased could have seen the freight train and probably did see it, and probably was deceived by it in thinking it to be her only danger in that direction. But at that point she likewise could have seen past the freight train to a point on the northbound track eight hundred feet south. As to this distance counsel agreed. When she was on the westerly rail of the southbound track she could have seen down the northbound track one thousand and thirty-five feet, therefore when she was three feet from the rail she had a clear and unobstructed view for some distance between eight hundred and one thousand and thirty-five feet.

Assuming that the train was moving at seventy miles an hour and she was walking at two or two and one-half miles an hour, the conclusion is irresistible, that when she looked the train was

visible to her. These facts would seem to establish the fact that Mrs. Evans could have seen the approaching train in time to have averted the accident when she looked, and looking, she must have seen.

If seeing, she did not heed the oncoming train then she rashly put herself in a position of danger that was inexcusable, a position that clearly debars her from recovery aga'nst the defendant. If, seeing, she did not comprehend, Mrs. Evans must be charged with seeing what was obvious, what any ordinary person under like circumstances and comprehension could or would have seen and comprehended. From the evidence the judges sitting below, reached the conclusion that the deceased was guilty of such contributory negligence as would prevent the plaintiff from recovering. The evidence of contributory negligence on the part of the deceased was so clear that the court felt impelled to grant a nonsuit.

After listening to the exhaustive arguments made at the last January term, and after carefully reading and considering the full and exhaustive briefs submitted by counsel, a majority of the judges sitting in the cause in this court unite in the conclusion reached by the court below.

The judgment of the court below is therefore affirmed.

CURTIS, Ch., (dissenting):—I do not agree with the conclusions of the majority of the court. I find evidence of Mrs. Evans' alertness to the dangers of the railroad crossing, and of the exercise of reasonable care and caution on her part to avoid them. It is not clear to me, from the evidence, what things were in fact visible to her when, just before stepping onto the tracks, she looked to the south, or clear that the calculations of counsel as to the location of the express train at that time were correct, and am convinced that the jury should have been permitted to decide both these points.

Furthermore, I consider that it should have been left to the jury to decide whether under the circumstances, referring particularly to the presence of the freight train, Mrs. Evans was negligent in not seeing the express train when she looked to the south,

if the jury should have found that the express train was then in fact within range of her vision.