**Phyllis E. BENNETT, Widow of John N. Bennett, III, deceased, Plaintiff,**

**v.**

**William C. ANDREE and Libby McNeill and Libby, Defendants.**

Superior Court of Delaware,
New Castle.

March 12, 1970.

Bruce M. Stargatt and Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

Roger Sanders and Robert G. Carey, of Prickett, Ward, Burt & Sanders, Wilmington, for defendants.

STIFTEL, President Judge.

This is an action for wrongful death under 10 Del.C. § 3704, brought by the widow of John N. Bennett, III, who was killed in a motor vehicle accident in Delaware on September 2, 1965. The case was first tried in the Superior Court in February, 1968, and the jury returned a verdict for plaintiff in the amount of $21,800. The jury had been instructed, over plaintiff's objection, not to take into consideration the minor children in awarding damages.

On motion by plaintiff, a new trial was granted by the Superior Court because of the inadequacy of the verdict. The judge reaffirmed his ruling at trial that the jury could not consider the children in awarding damages. Both sides appealed. The Supreme Court held that in awarding damages to the widow, the jury could take into consideration the children and affirmed the grant of a new trial by the trial judge. Bennett v. Andree, Del., 252 A.2d 100. The case was retried. This time, the jury returned a verdict for the defendant. The plaintiff had requested the court to instruct the jury that "decedent is presumed to have exercised due care for his own safety." Defendants opposed this instruction. The court did not instruct on the presumption. This motion for a new trial claims error for failure to instruct on the presumption of due care.

The precise location of the accident was at the intersection of U. S. Route 13 northbound and Delaware Route 14 in Kent County. Mr. Bennett had been traveling north on Route 13. Defendants' tractor-trailer had been traveling east on Delaware Route 14. The front of decedent's ice cream truck collided with the right side near the rear of defendants' tractor-trailer. Mr. Bennett was killed instantly in the collision.

Traffic flow through the intersection is regulated by a red-amber-green traffic light. A critical factual issue before the jury was which vehicle had the green light entering the intersection. A witness who was traveling on Route 13 behind decedent's vehicle testified that the light was green in decedent's favor. A second witness, traveling on Route 14 behind defendants' vehicle, testified that the light was green in favor of defendant driver. There were other witnesses to some of the circumstances surrounding the collision.

Plaintiff argues that a presumption of due care of decedent in a wrongful death action is the law of Delaware and the jury should have been told of the presumption. Defendants, on the other hand, contend that direct or eyewitness testimony on the facts of the accident eliminates the presumption from the consideration of the jury.

■ The presumption of due care in a death action has long been part of Delaware law. Odgers v. Clark, 2 Terry 232, 19 A.2d 724. The presumption is based on the recognition of the natural instinct in human beings for self-preservation and on the policy consideration of the ofttimes practical difficulty on the part of plaintiffs in a wrongful death action in gathering evidence about the decedent's last drive. Gray v. Pennsylvania R. Co., 3 W.W.Harr. 450, 139 A. 66, 76; 22 Am.Jur.2d, "Death", § 216.

The issue is narrow: In a death action, when there is conflicting independent testimony on the facts of the fatal accident, is plaintiff entitled to a jury instruction that the deceased is presumed to have exercised due care?

In Evans v. Philadelphia B. & W. R. Co.,[1] 2 Boyce 370, 80 A. 625, several witnesses testified. Some observed the decedent at intervals and heard the train whistle 600 feet before the crossing. Plaintiff's eyewitness said she looked south in the direction of the oncoming train and then north before proceeding into the path of the speeding seventy mile an hour train. The Superior Court refused to instruct on the presumption. It directed a verdict against plaintiff, deciding her contributory negligence as a matter of law. About the presumption, the Supreme Court said (80 A. at p. 626):

"By this presumption the court as well as a jury is governed, and when the testimony is silent as to the conduct of the deceased at the time of the injury and the circumstances suggest nothing as to his failure to exercise the caution which

1. Mentioned in Annotation, "Fatal Accident—Presumption of Due Care," 84 A.L.R. 1221, 1227, 1240, 1247.

the law requires of him, the court is bound by this presumption, and upon proof of negligence on the part of the defendant, will submit the case to the jury. But this presumption is rebuttable, and when it is shown as in this case, either by direct testimony or rebutting circumstances, (Queen Anne's R. R. Co. v. Reed, [Del., 5 Penn. 226, 59 A. 860]), that the deceased at the time of the injury did not exercise the care and caution required of her and that she proximately contributed to the injury that resulted in her death, she is thereby stripped of the presumption with which the law at first clothed her, and leaves her case to be determined, either by the court on a motion for nonsuit, *or by the jury if submitted to them, by the same unaided rules of law that apply in any other case where the injured person survives.*" [2] (Emphasis supplied. See, also, Anno.:

2. The Supreme Court appears to adopt the Thayer-Wigmore view on the effect of this presumption.

Professor Thayer defined the concept of the burden of proof, dividing it into two elements—the burden of going forward with the evidence and the burden of persuasion. He concluded that a presumption merely shifts the burden of going forward with the evidence:

"1. A presumption operates to relieve the party in whose favor it works from going forward in argument or evidence.

"2. It serves therefore the purposes of a prima facie case, and in that sense it is, temporarily, the substitute or equivalent for evidence.

"3. It serves this purpose until the adversary has gone forward with his evidence. How much evidence shall be required from the adversary to meet the presumption, or, as it is variously expressed, to overcome it or destroy it, is determined by no fixed rule. It may be merely enough to make it reasonable to require the other side to answer; it may be enough to make out a full prima facie case, and it may be a great weight of evidence, excluding all reasonable doubt.

"4. A mere presumption involves no rule as to the weight of evidence necessary to meet it. When a presumption is called a strong one, like the presumption of legitimacy, it means that it is accompanied by another rule relating to the weight of evidence to be brought in by him against whom it operates.

"5. A presumption itself contributes no evidence, and has no probative quality. It is sometimes said that the presumption will tip the scale when the evidence is balanced. But, in truth, nothing tips the scale but evidence, and a presumption—being a legal rule or legal conclusion—is not evidence. It may represent and spring from certain evidential facts; and these facts may be put in the scale. But that is not putting in the presumption itself. A presumption may be called 'an instrument of proof', in the sense that it determines from whom evidence shall come, and it may be called something 'in the nature of evidence', for the same reason; or it may be called a substitute for evidence, and even 'evidence'—in the sense that it counts at the outset, for evidence enough to make out a prima facie case. But the moment these conceptions give way to the perfectly distinct notion of evidence proper, i. e., probative matter, which may be a basis of inference, something capable of being weighed in the scales of reason and compared and estimated with other matter of the probative sort—so that we get to treating the presumption of innocence or any other presumption, as being evidence in this its true sense, then we have wandered into the region of shadows and phantoms." Thayer, Preliminary Treatise on Evidence, Appx. B, pp. 575–576.

The Thayer view has been adopted by Professor Wigmore (9 Wigmore, Evidence, 3rd Ed., § 2491) and has been followed in numerous jurisdictions. See cases collected in 5 A.L.R.3rd 19, § 3. The Thayer-Wigmore view has been adopted by the American Law Institute in Rule 704 of the Model Code of Evidence:

"Rule 704. Effect of Presumptions.

"(1) Subject to Rule 703, when the basic fact of a presumption has been established in an action, the existence of the presumed fact must be assumed unless and until evidence has been introduced which would support a finding of its non-existence or the basic fact of an inconsistent presumption has been established.

"(2) Subject to Rule 703, when the basic fact of a presumption has been established in an action and evidence has been introduced which would support a finding of the non-existence of the presumed fact or the basic fact of an inconsistent presumption has been

"Fatal Accident—Presumption of Due Care", 84 A.L.R. 1221–1240).

The italicized language indicates that the issue of contributory negligence on the part of the deceased is submitted to the jury by the "same unaided rules of law that apply in any other case where the injured person survives" when evidence is produced against the presumption.

Admittedly, defendant Andree produced eyewitness testimony. True, it was controverted by other witnesses in whole or in part, but under the language in *Evans*, was not the decision on the issue of contributory negligence for the jury "unaided" by the presumption? So the *Evans* court seems to say.

In Reed v. Queen Anne's R. Co., 4 Penn. 413, 57 A. 529, an eyewitness testified that decedent tried to beat the train through the crossing with his horse-drawn carriage. The trial court told the jury of the presumption but told them it did not apply where all the circumstances are detailed by eyewitnesses. The court left it to the jury to determine if they believed the eyewitness rebuttal testimony. If they did not, apparently they were free to let the presumption remain. The Supreme Court, on appeal, in Queen Anne's R. Co. v. Reed, 5 Penn. 226, 59 A. 860, told the trial court that it should have directed a verdict. The court said about the presumption:

"While, as it has already been said, in the absence of evidence to the contrary the usual presumption is that one approaching a railroad has exercised due care and caution, in this case the court

is not left to such presumption alone, in determining the question of the diligence or negligence of the deceased, as we have the uncontradicted testimony of eyewitnesses as to his conduct immediately before and at the time of the accident." (59 A. 860, 864.)

In Davis v. Brooks Transportation Company, 186 F.Supp. 366 (D.C.Del.), an intoxicated decedent, traveling in a car at a speed between 60 and 80 miles per hour, entered the intersection without slowing down, right into the path of defendant's truck. Plaintiff argued that the summary judgment motion should be denied because of the presumption. The District Court said:

"The short answer is that this presumption disappears where there are witnesses to the accident. There is no such presumption in this case. Reed v. Queen Anne's Railway Co., Del.Super.1903 [4 Penn. 413], 57 A. 529." [3]

Where all the evidence produced was against the presumption, the above courts refused to treat it as evidence and the defendants prevailed. Yet in Odgers v. Clark, *supra*, the presumption was treated as evidence; and in the absence of testimony against the presumption, the trial judge directed a verdict for plaintiff. In Nolan v. Sullivan, 372 F.2d 776, 3 Cir., the court reviewed a non-jury decision of the District Court judge interpreting Delaware law and clearly placed great evidentiary value on the presumption in reversing the District Court. Except for the *Odgers* case, the court assumed that Delaware law was the same as Pennsylvania law.[4] Arguably, in

---

established, the existence or non-existence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action." (pp. 313–314).

Under the Thayer-Wigmore view, when the trial judge is satisfied that the party against whom the presumption operates has come forward with sufficient direct evidence, the presumption is removed from the case and is not mentioned to the jury. See Blakeman v. Lofland, et al., 173 Kan.

725, 252 P.2d 852; Seiler v. Whiting, 52 Ariz. 542, 84 P.2d 452.

3. McGuire v. McCollum, 10 Terry 359, 116 A.2d 897, was decided against the plaintiff on summary judgment also but the court found it unnecessary to consider the presumption since it decided as a matter of law that defendant was not negligent based on the record.

4. Defendants say that the trend in Pennsylvania is away from the Morgan camp and toward the Thayer-Wigmore encamp-

*Odgers* the same result would have obtained without the use of the presumption, since defendant already had the burden to establish by a preponderance of the evidence the contributory negligence of the decedent. In fact, in jurisdictions such as ours, where the burden is on the defendant to establish plaintiff's contributory negligence by a preponderance of the evidence, the reason for the use of the presumption diminishes. See Hutton v. Martin, 41 Wash. 2d 780, 252 P.2d 581, 586 (1953); see, too, Falknor, "Notes on Presumptions", 15 Wash.L.Rev. 71; 2 NACCA Law Journal 127. Naturally, the introduction of substantial direct and eyewitness testimony on the issue upon which the presumption is founded causes the reasons for the existence of the presumption to get weaker. See, Anno: "Presumption—Controverting Evidence", 5 A.L.R.3d 19, 27 (citing *Reed*).

A ruling of the trial judge should not be overturned by him unless clearly in error. To say there is no confusion or discrepancies in the decisions would be wrong. However, the language in *Evans* and some of the other cases cited indicates that the decision to omit the presumption in the instructions was proper. This eyewitness rule is not an easy one to apply. The determination of the quantum of testimony required at trial to eliminate the presumption will not always be subject to simple solution. Perhaps it would be more convenient to let the jury determine when this presumption should no longer stand. See "Presumptions", 40 Minn.L. Rev. 391, 404, 405 (1956). However, in light of the foregoing and for the reasons stated plaintiff's motion for a new trial must be denied.

So ordered.

---

ment. Plaintiff disputes this. Both seem to depend on Klink v. Harrison, 332 F.2d 219 (3 Cir.), for their different conclusions. Regardless of the present trend in Pennsylvania, it was clearly in the Morgan camp at one time.

The so-called Morgan view, named after its chief proponent, Professor Edmund M. Morgan, is generally considered the alternative to the Thayer-Wigmore view. Morgan argued that a presumption should operate not only to shift the burden of going forward with the evidence, but also should shift the burden of persuasion to the party against whom the presumption operates. He contended that most presumptions are based on an important social policy or upon facts which give rise to a probability that the presumed fact exists. See Morgan, "Some Observations on Presumptions", 44 Harv.Law Rev., 906, and Morgan, "Instructing the Jury Upon Presumptions and Burden of Proof", 47 Harv.Law Rev. 59.

Under the Morgan view, a presumption affecting the burden of persuasion continues to exist in the face of evidence to the contrary. A jury would be told of its existence. See Karp v. Herder, 181 Wash. 583, 44 P.2d 808.

The Morgan view has been adopted by the Commission on Uniform State Laws in the Uniform Rules of Evidence:

"Rule 14. Effect of Presumptions. Subject to Rule 16, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact is upon the party against whom the presumption operates, (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the non-existence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved." (p. 171.)

The comment to the rule informs us that nearly all presumptions are based on probability and fit within the first subsection of the rule, and suggests there is a "strong argument for the view that the jury needs guidance in this situation if they are to give effect to the probabilities and frequently the substantive policy on which the presumption is based." Comment, Rule 14, Uniform Rules of Evidence.